JENNIFER PERKINS, EMPLOYEE, PLAINTIFF v. U.S. AIRWAYS, EMPLOYER, RELIANCE NATIONAL INSURANCE COMPANY, INSOLVENT, NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, SEDGWICK CMS, THIRD PARTY ADMINISTRATOR, CARRIER, DEFENDANTS

No. COA05-392

(Filed 18 April 2006)

**1. Workers' Compensation— weight and credibility of medical testimony—sole purview of Commission**

Arguments from a workers' compensation plaintiff about the weight and credibility of medical testimony did not justify overturning the Industrial Commission's denial of benefits. The Commission is entitled to give greater weight to the testimony of some doctors over others, and, as questions of weight and credibility are solely within the purview of the Commission to decide, the appellate court may not revisit those determinations.

**2. Workers' Compensation— ex parte contact—failure to object—waiver**

The failure to object in a workers' compensation case to an alleged ex parte contact between a doctor and the defendants resulted in the issue not being preserved for appeal.

**3. Workers' Compensation— findings—not required on every point—reasonable inferences of Commission not revisited**

Although a workers' compensation plaintiff argued that the record supported additional findings, the Industrial Commission is not required to make findings on a particular point merely because plaintiff has presented evidence on that subject, so long as the findings are sufficient to address the issues and the evidence before it. Also, the Court of Appeals may not revisit the Commission's reasonable inferences.

**4. Workers' Compensation— lightning strike—denial of compensation—contrary testimony from one of several doctors**

The testimony of one of the doctors in a workers' compensation case did not justify overturning the Industrial Commission's findings and conclusions denying compensation to a flight attendant who suffered a lightning strike injury. The testimony of other doctors supported the findings and conclusions.

**5. Workers' Compensation— disability—capacity to return to work—evidence sufficient**

The record in a workers' compensation proceeding contains evidence supporting the Commission's determination that the plaintiff was capable of returning to work and that she had failed to carry her burden of showing that she remained disabled.

**6. Workers' Compensation— partial disability—evidence presented—not addressed**

The Industrial Commission erred in a workers' compensation case by failing to address whether plaintiff was entitled to partial disability benefits where there was medical testimony of a 10% partial disability rating. The case was remanded.

Appeal by plaintiff from an opinion and award filed 21 December 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 16 November 2005.

*Bazzle & Carr, P.A., by Ervin W. Bazzle, for plaintiff-appellant.*

*Brooks, Stevens & Pope, P.A., by Daniel C. Pope, Jr. and Kimberley A. D'Arruda, for defendants-appellees.*

GEER, Judge.

Plaintiff Jennifer Perkins appeals from an opinion and award of the Industrial Commission concluding that she is not entitled to workers' compensation benefits. On appeal, Ms. Perkins challenges the Commission's decision to give greater weight to the testimony of certain expert witnesses, whose testimony was less favorable to her position, rather than the more favorable testimony of other experts. Additionally, Ms. Perkins objects to the Commission's failure to make findings regarding certain details in the evidence and its failure to draw more inferences in her favor. Because Ms. Perkins' arguments are inconsistent with the applicable standard of review, we affirm the Commission's order. Nevertheless, since the Commission failed to address Ms. Perkins' entitlement to compensation under N.C. Gen. Stat. § 97-31 (2005), we remand for determination of this issue.

## Facts

Ms. Perkins had been working as a flight attendant for 10 years when, on 10 May 2000, lightning struck a jet near her while she was helping passengers deplane from another U.S. Airways aircraft. Immediately after the strike, Ms. Perkins felt a "hot poker feeling" in her right arm that persisted as a burning, "pins and needles" sensation. She was treated by paramedics at the scene and told to follow up with a doctor if problems continued. U.S. Airways filed a Form 60 admitting compensability. Over the next ten months, Ms. Perkins continued to perform her regular duties as a flight attendant for U.S. Airways.

Within a week of the accident Ms. Perkins saw neurologist Dr. Jerry Williams for a pre-existing neurological condition and complaints of tightness in her right side. In a later appointment, Ms. Perkins also complained of right arm and shoulder pain. Dr. Williams diagnosed Ms. Perkins as having an electric shock injury. A lumbar MRI showed disc degeneration at L5-S1 with mild broad-based disc protrusion, marginal osteophytosis, facet joint degenerative joint disease, and mild concentric disc protrusion at L1-2. Dr. Williams continued to treat Ms. Perkins and ultimately excused her from work. As a result, Ms. Perkins began receiving temporary total disability benefits on 14 March 2001.

Defendants referred Ms. Perkins to Dr. Roger Hershline for treatment relating to the lightning strike. On 30 March 2001, Dr. Hershline diagnosed her as suffering a cervical strain or cervical disc bulge and an electrical shock injury. He continued to excuse Ms. Perkins from work and referred her to Dr. Nicholas Grivas, a neurosurgeon, for assessment of her cervical condition. Dr. Grivas found no neurological deficits or any signs consistent with degenerative disc disease or a ruptured disc. He also testified that he did not find any evidence that Ms. Perkins suffered from thoracic outlet syndrome or any other surgically correctable abnormality.

On 13 April 2001, Ms. Perkins complained to Dr. Hershline of pain in her neck, shoulder, and arm, as well as problems with her memory. Ms. Perkins was able to answer Dr. Hershline's standard clinical memory tests correctly. With respect to the pain, Dr. Hershline noted that Ms. Perkins' recent home remodeling efforts had required greater physical exertion than Ms. Perkins' previous duties as a flight attendant. Further, although Ms. Perkins presented symptoms of depression, Dr. Hershline concluded they were not related to her lightning injury. He recommended that Ms. Perkins complete two more weeks of physical therapy and return to work without restrictions. The Commission found—in a finding of fact not challenged on appeal—that "[f]rom this point forward, plaintiff's list of claimed symptoms expand[ed] dramatically."

On 8 June 2001, Ms. Perkins was seen by Dr. Rebecca Holdren in Greenville, South Carolina. Initially, Dr. Holdren diagnosed Ms. Perkins as suffering from reflex sympathetic dystrophy ("RSD"). Dr. Hershline, however, expressed the view that an RSD diagnosis was not supported by clinically observed symptoms and recommended a bone scan. A 13 July 2001 bone scan was normal. On 24 July 2001, Dr. Holdren agreed that the RSD diagnosis was incorrect and concluded that Ms. Perkins could return to work, from a physical standpoint, although she recommended three weeks of transitional work.

Defendants subsequently filed a Form 24 seeking to· terminate Ms. Perkins' disability benefits on the grounds that she was no longer disabled. Special Deputy Commissioner Myra L. Griffith approved the application, and Ms. Perkins' disability benefits were ordered terminated on 12 September 2001.

Ms. Perkins learned of the Mensana Clinic in Maryland "through a lightning strike survivor's Internet website" and went there to see psychiatrist Dr. Nelson Hendler on 7 August 2001. At that time, Ms.

Perkins reported an extensive list of physical conditions, including headaches, numbness, weight gain, spasms, trembling, and pain throughout much of her body. Dr. Hendler diagnosed Ms. Perkins with, among other things, thoracic outlet syndrome and nonfatal lightning injury with brain damage.

Subsequent evaluation by neuropsychologist and Mensana Clinic affiliate Dr. Sheldon Levin found no neurocognitive disorders related to the lightning strike. Dr. Levin noted that Ms. Perkins was presenting a "mixed pattern of symptoms" that would normally be diagnosed as a somatization disorder, but declined to give this diagnosis based on Dr. Hendler's conclusion "that [Ms. Perkins] suffered from a physical rather than a mental illness."

The Commission ordered an independent medical examination and, on 11 December 2001, Ms. Perkins saw orthopaedist Dr. Robert Elkins. Dr. Elkins diagnosed Ms. Perkins as suffering from a lightning strike injury and related right upper extremity myofascial pain syndrome. Dr. Elkins concluded that Ms. Perkins had reached maximum medical improvement and assigned a 10% permanent partial disability rating to her upper right extremity. While Dr. Elkins believed that Ms. Perkins was disabled from her previous position as a flight attendant, he concluded she was capable of performing light to moderate duty work.

Dr. Hendler subsequently referred Ms. Perkins to neurologist Dr. Donlin Long, who found that Ms. Perkins had a normal EMG and cervical imaging study. Although he agreed that her complaints fit the classic definition of somatization disorder, he performed spinal fusion surgery based on Ms. Perkins' responses to "provocative disc blocks."

Dr. Hendler also referred Ms. Perkins to Dr. Avraam Karas. Dr. Karas performed several more surgeries on Ms. Perkins, including multiple rib resections and thoracic outlet syndrome surgeries. Ms. Perkins has requested additional surgery because of continuing pain.[1]

A hearing was held by Deputy Commissioner Adrian A. Phillips on 12 November 2002 for consideration of: (1) whether Ms. Perkins' compensable injury caused her cervical and lumbar spine injuries, thoracic outlet syndrome, depression, post-traumatic stress syn-

---

1. Ms. Perkins also received treatment from other practitioners whose findings are not necessary to recite for resolution of this appeal.

drome, and somatization disorder; and (2) to what degree Ms. Perkins was disabled as a result of her compensable injury. The deputy commissioner concluded that the lightning strike had caused Ms. Perkins' physical conditions as well as her "severe depression and psychiatric illness" and ordered defendants to pay temporary total disability benefits and all related medical expenses.

On appeal, the Full Commission reversed. The Commission decided to give "greater weight to the testimony of Dr. Hershline, Dr. Williams, Dr. Holdren, Dr. Grivas, Dr. Demas and Dr. Elkins than to Dr. Hendler, Dr. Levin, Dr. Long and Dr. Karas," noting that Drs. Hershline and Williams were Ms. Perkins' primary treating physicians immediately following the accident, whereas Dr. Hendler "did not see [Ms. Perkins] until more than a year after her initial injury." The Commission noted further that (1) "Dr. Hendler [had] relied on [Ms. Perkins'] subjective complaints even when they [were] contradicted by the documentation provided by her previous physicians," and (2) Drs. Levin, Long, and Karas had "deferred to the opinion of Dr. Hendler even when the objective evidence . . . contradicted Dr. Hendler's diagnoses . . . ."

Although the Commission agreed that Ms. Perkins had sustained an injury by accident on 10 May 2000, it concluded that she had:

failed to establish though [sic] competent and credible medical evidence that [her] conditions with which she was diagnosed by Dr. Hendler and by the doctors to whom he referred [her] for the treatment of those conditions . . . were related to or aggravated by her compensable injury of May 10, 2000 as these diagnoses are contradicted by the objective medical evidence, records and testimony of Dr. Hershline, Dr. Williams, Dr. Grivas, Dr. Elkins, Dr. Demas and Dr. Holdren.

The Commission further concluded that "[a]s of July 1, 2001, [Ms. Perkins] was capable of returning to full-duty work without restrictions." With respect to the diagnosis of a somatization disorder, the Commission stated that "[m]erely being the 'precipitating' or 'triggering' event for her somatization disorder does not establish causation." Ms. Perkins timely appealed from this opinion and award.

## Discussion

On appeal from a decision of the Full Commission, this Court reviews only (1) whether the Commission's findings of fact are supported by competent evidence in the record, and (2) whether the

Commission's findings justify its legal conclusions. *Counts v. Black & Decker Corp.*, 121 N.C. App. 387, 389, 465 S.E.2d 343, 345, *disc. review denied*, 343 N.C. 305, 471 S.E.2d 68 (1996). The Commission's findings are conclusive on appeal if they are supported by competent. evidence, even if the evidence might also support a contrary finding. *Jones v. Candler Mobile Village*, 118 N.C. App. 719, 721, 457 S.E.2d 315, 317 (1995). Consequently, "[t]he Commission's findings of fact may be set aside on appeal only where there is a complete lack of competent evidence to support them." *Id.*

I

[1] Much of Ms. Perkins' argument on appeal rests on her contention that "[t]he Commission committed a reversible error by not affording greater weight to the testimony of the physicians with experience treating patients with lightning strike injuries, and to the physicians whom have treated Ms. Perkins on a regular basis." Similarly, Ms. Perkins contends that "[t]he record reflects that little, if any, weight should be given to the opinion of Dr. Hershline." The Commission is entitled, however, to give greater weight to the testimony of some doctors over others. *Hensley v. Indus. Maint. Overflow*, 166 N.C. App. 413, 420, 601 S.E.2d 893, 898-99 (2004), *disc. review denied*, 359 N.C. 631, 613 S.E.2d 690 (2005). Further, questions of weight and credibility are solely within the purview of the Commission to decide, and we may not revisit those determinations. *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (" 'The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965))).

Ms. Perkins argues that "[t]o afford greater weight to a doctor with no experience in an area who has unabashed loyalty to the defendants when there are physicians treating the patient with extensive experience, is unfair and unjust." That argument was for the Commission to assess and is not a proper subject for appellate review. *See Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 573, 603 S.E.2d 552, 558 (2004) (Hudson, J., dissenting) ("In reviewing a workers' compensation claim, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight." (internal quotation marks omitted)), *adopted per curiam by*, 359 N.C. 403, 610 S.E.2d 374 (2005). Accordingly, Ms. Perkins' arguments regarding weight and credibility cannot justify overturning the Commission's opinion and award.

[2] With respect to Dr. Hershline in particular, Ms. Perkins also argues that an *ex parte* communication between Dr. Hershline and defendants rendered his testimony incompetent under *Salaam v. N.C. Dep't of Transp.*, 122 N.C. App. 83, 468 S.E.2d 536 (1996), *disc. review improvidently allowed*, 345 N.C. 494, 480 S.E.2d 51 (1997). Ms. Perkins did not, however, object on *Salaam* grounds before the Commission, and, therefore, her contentions on this issue have not been preserved for appellate review. N.C.R. App. P. 10(b)(1).

[3] With respect to individual findings of fact, Ms. Perkins argues that the record supports additional findings not made by the Commission. So long as the Commission makes findings sufficient to address the issues and evidence before it, the Commission is not required to make findings of fact as to a particular point merely because the plaintiff has presented evidence on that subject. *See Dunn v. Marconi Commc'ns., Inc.*, 161 N.C. App. 606, 611, 589 S.E.2d 150, 154 (2003) ("[M]erely because plaintiff presented credible evidence, the Commission was not required to make findings of fact regarding that evidence."). Ms. Perkins also asserts that the Commission should have drawn different inferences from the evidence upon which it did rely. As with decisions regarding credibility and weight, this Court may not revisit reasonable inferences drawn by the Commission. *Norman v. N.C. Dep't of Transp.*, 161 N.C. App. 211, 224, 588 S.E.2d 42, 51 (2003), *disc. review denied*, 358 N.C. 235, 595 S.E.2d 153, *cert. denied*, 358 N.C. 545, 599 S.E.2d 404 (2004).

[4] In arguing further that the Commission erred when it failed to find that Ms. Perkins' conditions were caused by her 10 May 2000 injury, Ms. Perkins relies on the testimony of Drs. Hendler, Long, Karas, Levin, and Demas. With the exception of Dr. Demas, the Commission chose not to rely upon those doctors' opinions, as it was entitled to do.

As for Dr. Demas, Ms. Perkins asserts that he stated that she "is disabled due to a psychological impairment due to her post traumatic reaction to the trauma of her lightning strike event." The Commission acknowledged this diagnosis in its finding relating to Dr. Demas, but further found that "Dr. Demas testified that he felt plaintiff had a somatization disorder, and as evidence cited her overly dramatic descriptions of her symptoms, her refusal to consider that there might be a psychological reason for her problems, and her seeking treatment from more and more physicians. *He concluded the lightning itself would not have caused the condition but may have been a precipitating event.*" (Emphasis added.) This finding is supported by the

record. The Commission ultimately found that "[t]he greater weight of the evidence shows that plaintiff suffers from somatization disorder, which causes her to turn emotional anxiety into physical complaints." It concluded, however, that "[m]erely being the 'precipitating' or 'triggering' event for her somatization disorder does not establish causation," citing *Brewington v. Rigsbee Auto Parts*, 69 N.C. App. 168, 316 S.E.2d 336 (1984).

In his dissent, Commissioner Thomas J. Bolch did not disagree with the Commission's assessment of the medical evidence, but concluded that "the majority erred in failing to find that plaintiff's somatization disorder is causally related to the lightning strike that she experienced on May 10, 2000. The majority should have found that plaintiff is mentally incapable of any employment as the consequence of her work-related injury . . . ." Ms. Perkins, however, has chosen not to bring forth any argument on this issue on appeal and, accordingly, we may not address it. *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) ("It is not the role of the appellate courts . . . to create an appeal for an appellant.").

As a result, we conclude that the testimony of Dr. Demas does not justify overturning the Commission's findings and conclusions. Since Dr. Hershline's testimony, together with evidence and testimony from other doctors, supports the Commission's findings of fact and its conclusion that the Ms. Perkins failed to establish that the "conditions with which she was diagnosed by Dr. Hendler and by the doctors to whom he referred [her] . . . were related to or aggravated by her compensable injury," we are required to uphold this aspect of the Commission's opinion and award.

II

[5] Ms. Perkins next argues that the Commission erred by concluding that she was not entitled to compensation for loss of wage earning capacity after 12 September 2001, the date that defendants' Form 24 was approved. "The burden is on the employee to show that [s]he is unable to earn the same wages [s]he had earned before the injury, either in the same employment or in other employment." *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). An employee may meet this burden in one of four ways:

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that

he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Id.* (internal citations omitted).

Ms. Perkins relies primarily on the first option, arguing that the medical evidence establishes that her work injury rendered her incapable of work in any employment. Of all the doctors to see Ms. Perkins, however, only Dr. Long stated that Ms. Perkins was incapable of doing any kind of work. Several of the other doctors— including Drs. Elkins, Karas, and Demas—testified that Ms. Perkins was capable of performing some kind of work. While we agree with Ms. Perkins that there is medical evidence to support a determination that she could not return to full-time work as a flight attendant, this alone is insufficient to establish that she was incapable of earning wages at any job.

Ms. Perkins alternatively argues that because she contacted U.S. Airways about a light duty position and they did not offer her one, the Commission erred by not concluding she was disabled under the second option, *i.e.*, that she is capable of some work but had been unable to obtain employment after a reasonable effort. Ms. Perkins cites to no authority—and we know of none—that would have required U.S. Airways to offer Ms. Perkins such a position. The record contains no indication that Ms. Perkins made any other attempts to obtain employment. The Commission was free to decide, as it did, that Ms. Perkins' single contact with U.S. Airways was insufficient to establish she had made a reasonable effort to obtain employment under the second *Russell* option.

We, therefore, conclude that the record contains evidence to support the Commission's determination that "[a]s of July 1, 2001, plaintiff was capable of returning to full-duty work without restrictions" and that "plaintiff failed in her burden of proving that, after that date, she remained disabled as a result of the compensable injury of May 10, 2000." These determinations in turn support the Commission's conclusion that plaintiff is not entitled to compensation under N.C. Gen. Stat. §§ 97-29 or 97-30 (2005) after 12 September 2001, the date upon which the Form 24 was approved.

[6] Ms. Perkins, however, contends alternatively that the Commission erred by failing to specifically address whether she was entitled to compensation under N.C. Gen. Stat. § 97-31. "It is well established that the full Commission has the duty and responsibility to decide all matters in controversy between the parties, and, if necessary, the full Commission must resolve matters in controversy even if those matters were not addressed by the deputy commissioner." *Payne v. Charlotte Heating & Air Conditioning*, 172 N.C. App. 496, 501, 616 S.E.2d 356, 360 (2005) (internal quotation marks omitted).

The Commission found that "Dr. Elkins concluded that plaintiff was suffering from a probable lightning strike injury and right upper extremity myofascial pain syndrome which he felt were related to her compensable injury, and mild degenerative changes of the neck and back which he did not feel were related." The Commission did not, however, address Dr. Elkins' opinion that Ms. Perkins had a 10% permanent partial disability rating to the right upper extremity. Further, the Commission's opinion and award contains no explanation why it did not believe Ms. Perkins to be entitled to compensation for permanent partial disability benefits based on that rating. Nor do defendants address this issue on appeal. Accordingly, we remand to the Commission for a determination whether Ms. Perkins is entitled to compensation under N.C. Gen. Stat. § 97-31.

Affirmed in part and remanded in part.

Judges HUNTER and McCULLOUGH concur.