* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the Parties at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. Plaintiff contends and Defendants deny that Plaintiff suffered a compensable injury by accident arising out of and in the course of his employment on July 12, 2004.
3. Defendants contend and Plaintiff agrees that the Hollingsworth Company, Inc., is a potential statutory employer under N.C. Gen. Stat. § 97-19, and that Plaintiff did not receive wages from the Hollingsworth Company, Inc.
4. The parties further agree that Plaintiff's average weekly wage is an issue that will have to be determined by the Commission.
5. Plaintiff has not received any compensation for the claimed injury by accident sustained on July 12, 2004, and has not received payment for any of the medical bills which he alleges were incurred as a result of the claimed July 12, 2004 injury by accident.
6. The parties stipulated the following documents into evidence:
 (a) Pre-Trial Agreement;
 (b) All Industrial Commission Forms filed in this matter to include Forms 18, 19, 61, 33, 33R and an Amended 33R;
 (c) Defendants' Motion dated January 11, 2005;
 (d) Medical records from Medical Associates of Transylvania, P.A. dated July 15, 2004, and consisting of 2 pages;
 (e) Medical records from the Transylvania Community Hospital dated July 12, 2004, and consisting of 11 pages;
 (f) Medical bills from Transylvania Community Hospital and consisting of 7 pages;
 (g) Plaintiff's responses to Defendants' pre-hearing interrogatories;
 (h) Plaintiff's recorded statement dated July 23, 2004;
 (i) Chain of Custody Document documenting transfer of custody of telephone from Danny Hollingsworth, to Sean Fokes for inspection;
 (j) Wage records from Danny Hollingsworth showing wages paid to Randy Heatherly/CDS Drywall. These documents were all provided to the Deputy Commissioner at hearing.
 (k) The telephone used on July 12, 2004, was submitted as an exhibit to the deposition of Sean Fokes, and was mailed to the Commission.
 (l) During the hearing before the Deputy Commissioner, the Plaintiff admitted Plaintiff's Exhibit Number 1, which consisted of the Plaintiff's amended answers to the Defendants' pre-hearing interrogatories.
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of hearing before the Deputy Commissioner, Plaintiff was 43 years of age. On July 12, 2004, his brother Randy Heatherly/CDS Drywall employed him as a drywall hanger.
2. Randy Heatherly paid Plaintiff an average of $500.00 per week, which was paid in cash. This generates a compensation rate of $333.35.
3. On July 12, 2004, Plaintiff was working for Randy Heatherly/CDS Drywall at a jobsite on Ridge Mountain in Brevard, North Carolina — a location high on the mountain, where a new house was being built. The house had a metal roof and weather vanes on top. Plaintiff and the other members of the crew setup their tools and equipment in the garage and ran all of the electrical cords for their work equipment from the garage to various parts of the house. The Plaintiff was hanging drywall inside the house, along with his uncle, Billy Justice. A thunderstorm arose, and they had to stop work early.
4. Plaintiff was standing inside the garage, about five feet from the open entrance. He had just called and was on the phone with his brother Randy Heatherly to tell him that they were finishing up on the job site, due to the storm. While he was on the phone, Plaintiff suddenly received an electrical charge or jolt, which picked him up into the air and threw him backwards approximately 8 feet from where he had been standing. He landed on his head and shoulder on the concrete floor, striking his head, shoulders and right arm. Plaintiff was dazed and confused, but was aware that his uncle, Billy Justice, was present and assisting him. Plaintiff felt pain and burning in his right hand and left foot.
5. Randy Heatherly's testimony confirms that something happened while he was on the phone with Plaintiff. As they were speaking, Randy Heatherly heard a loud bang and the phone call was suddenly disconnected.
6. Billy Justice witnessed Plaintiff being picked up and thrown about 8 feet, and landing on his head and shoulders. Billy Justice was standing in the door opening leading from the house into the attached garage. He testified, "There were sparks coming out of the drop cord and all where the lightning was hitting all around us." Mr. Justice ran to Plaintiff who was lying on the floor dazed, confused, and hurting. He helped Plaintiff get up, gathered the tools, and took Plaintiff to the hospital. Mr. Justice's testimony, which is not contradicted by anyone, is found to be credible, and supports a finding that Plaintiff incurred some type of electrical jolt, or charge, which lifted him into the air and threw him backward and that Plaintiff landed on the concrete floor, striking his head, shoulder, and right arm.
7. Although the Plaintiff alleges that he sustained a lightning strike, the evidence is disputed in this regard. It is undisputed that he sustained an injury due to lightning, but he did not sustain a direct strike from lightning. Plaintiff received an electrical charge or jolt from lightning. As to whether it came through the telephone line, the Defendants' expert witness, Sean Fokes, testified that the lack of damage to the telephone indicates that there was no electricity passing through it. Plaintiff does not contend that the lightning strike necessarily came through the phone line. The Full Commission finds as fact that lightning hit some portion of the premises near Plaintiff, which became charged and the charge was transmitted to Plaintiff. The charge could have come from lightning striking the electrical drop cord, other work equipment in the garage, or some portion of the garage in the area near the place where Plaintiff was standing. Plaintiff testified that as he dialed the phone, the lightning was popping in the open garage. The electrical charge or jolt generated by the lightning was sufficient to lift Plaintiff into the air and throw him backwards approximately 8 feet.
8. In weighing the evidence, the Full Commission has determined that Plaintiff's evidence does not require a finding that the electricity came through the telephone line, or a finding that he sustained a direct lightning strike. The evidence, especially the eyewitness testimony of Billy Justice, is sufficient to establish that Plaintiff sustained an electrical charge or jolt, either by lightning hitting the electrical drop cord, other tools or equipment in the garage, or some other part of the premises producing an electrical charge or jolt that was transmitted to Plaintiff. The evidence shows that the electrical charge or jolt lifted Plaintiff into the air and threw him backwards approximately 8 feet on the concrete floor. Plaintiff's right hand fracture occurred as a result of his landing on the concrete floor. The electrical cords, equipment and tools stored in the garage, including the drop cord, was used to further Defendant-Employer's work.
9. Plaintiff was assessed at Transylvania Community Hospital for a possible lightning strike injury. He complained of pain in his right hand and left foot. X-rays of his right hand showed closed right fourth and fifth metacarpal fractures. Plaintiff was given morphine for pain.
10. Randy Heatherly visited Plaintiff in the hospital. As Randy Heatherly testified, he observed that Plaintiff's right hand was bruised and swollen up, and it had not been so injured the day before.
11. Plaintiff was referred to an orthopaedic surgeon for further treatment of his hand, but did not receive the necessary treatment, due to the denial of the claim and lack of medical coverage. He has not received further treatment for his hand injury, and is in need of orthopaedic evaluation and treatment.
12. Due to his hand injury, Plaintiff was unable to engage in his regular employment hanging sheetrock. He was unable to earn wages in any employment until he returned to work on January 3, 2005.
13. Randy Heatherly/CDS Drywall did not have workers' compensation insurance for his employees. Daniel Hollingsworth was aware that Randy Heatherly did not have workers' compensation insurance and took money out of wages paid to Randy Heatherly to pay workers' compensation insurance premiums for Randy Heatherly and his employees, including Plaintiff.
14. The Carrier for Daniel Hollingsworth is the carrier on the risk and is responsible for paying benefits to Plaintiff for his work-related injury of July 12, 2004.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. On July 12, 2004, Plaintiff sustained an electrical shock injury by accident arising out of and in the course of his employment with Defendant-Employer, The Hollingsworth Company, Inc., when lightning struck equipment inside, or some other part of the open garage near him. The electrical charge or jolt due to lightning, lifted him up into the air and threw him backwards, causing him to land on his head, shoulder and right arm. As a result of being lifted into the air and landing on the concrete floor, Plaintiff suffered a fracture of his right hand. N.C. Gen. Stat. § 97-2(6). The electrical charge or jolt to Plaintiff due to the lightning and his resulting fall, constituted an unlooked for and unexpected event and the interruption of his normal work routine. Harding v. Thomas Howard Co., 256 NC 427 (1962). 1 Arthur Larson and Lex K. Larson, Larson's Workers' Compensation Law at p. 5-1 (2000) ("One exception used to soften the increased-risk rule is the holding that if the harm, though initiated by an act of God, takes effect through contact of claimant with any part of the premises, causal connection with the employment is shown."); see e.g. Perkins v. U.S. Airways,
___ N.C. App. ___, 628 S.E.2d 402 (2006) (noting that Defendants admitted compensability where the flight attendant received an electrical charge or shock when lightning struck a plane near her as she assisted passengers in exiting plane).
2. In this case, the medical records and lay testimony are sufficient to establish a causal relationship between Plaintiff's injury by accident and the hand fractures diagnosed later the same day at the hospital. This is not a situation that involves complex medical issues, such that expert testimony is needed to establish the cause and effect between being thrown up into the air and landing on a concrete floor and sustaining a hand fracture. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164
(1980).
3. Randy Heatherly was not insured for workers' compensation coverage, and The Hollingsworth Company, Inc., was Plaintiff's employer for purposes of workers' compensation coverage pursuant to N.C. Gen. Stat. § 97-19. Therefore, the Carrier for The Hollingsworth Company, (Stonewood Insurance Company) is the carrier on the risk.
4. Defendants are responsible for providing all reasonably necessary medical treatment for Plaintiff's injuries, including the future orthopaedic treatment needed for his hand injury. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. Due to his hand fracture and also the lack of medical treatment needed to effect a cure and provide relief, Plaintiff was unable to return to his regular job hanging sheetrock, and his physical limitations resulting from his injury hampered his ability to work or to find suitable work. He was temporarily totally disabled from the date of injury by accident through January 2, 2005. Defendants are responsible for paying him benefits for this period at the rate of $333.35 per week. N.C. Gen. Stat. § 97-29.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay the medical expenses previously incurred for Plaintiff's hospital visit and any other medical expenses incurred due to his injury by accident of July 12, 2004, when bills for such treatment have been submitted and approved according to procedures adopted by the Commission. Defendants are also responsible for future medical expenses for Plaintiff to receive treatment from an orthopaedic surgeon for his hand fractures.
2. Defendants shall pay Plaintiff temporary total disability compensation at the rate of $333.35 per week from July 12, 2004 through January 2, 2005. Such benefits have accrued and shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to Plaintiff is approved for his attorney. Twenty-five percent of the lump sum due Plaintiff shall be deducted and paid directly to his attorney.
4. Defendants shall pay the costs.
5. Plaintiff's entitlement to further indemnity compensation is reserved for subsequent determination.
This the __ day of October 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER