JULIA L. DAWES, Employee, Plaintiff-Appellant,
v.
AUTUMN CARE OF MARSHVILLE, Employer, and KEY RISK INSURANCE COMPANY, Carrier, Defendants-Appellees,
No. COA08-190
Court of Appeals of North Carolina
Filed January 6, 2009
This case not for publication
Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson and Fred D. Poisson, Jr., for plaintiff-appellant.
Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Shelley W. Coleman and Christopher D. Miller, for defendants-appellees.
JACKSON, Judge.
Julia Dawes ("plaintiff") appeals from an opinion and award of the Full Commission of the North Carolina Industrial Commission ("Full Commission") entered 3 December 2007. For the following reasons, we affirm in part and we reverse and remand in part. On 16 December 2002, plaintiff began her employment as a certified nursing assistant with Autumn Care of Marshville ("defendant"). On 16 October 2004, plaintiff suffered a compensable injury by accident during the course and scope of her employment with defendant. Plaintiff was assisting a patient when the patient fell on top of her and caused plaintiff also to fall. As a result of the fall, plaintiff struck her left knee on the cement, and she sprained and fractured her left ankle. Plaintiff immediately sought medical treatment at the Union Regional Medical Center Emergency Room. X-rays did not show a fracture to plaintiff's ankle, but she was written out of work for two days and sent home.
On 19 October 2004, plaintiff presented to Dr. Jeffery Daily ("Dr. Daily") at the Miller Orthopaedic Clinic because she continued to have pain in her ankle. Dr. Daily indicated that plaintiff had some swelling and that weight-bearing seemed to bother plaintiff, but found plaintiff's x-rays to be negative for a fracture. Based upon his physical examination of plaintiff and upon his review of plaintiff's x-rays, Dr. Daily diagnosed plaintiff's injury as an ankle sprain and restricted her walking and lifting. However, Dr. Daily wanted plaintiff to remain as functional as possible during her treatment. Dr. Daily instructed plaintiff to wear a removable boot and noted that he expected rapid improvement in plaintiff's condition.
On 18 November 2004, plaintiff presented to Dr. Joseph Zucker ("Dr. Zucker") who referred her to his associate, Dr. Alice Coyle("Dr. Coyle") for a secondary evaluation of her foot, ankle, and knee because she still was feeling considerable pain in her left foot. Dr. Coyle took an x-ray of plaintiff's left ankle and found a possible fracture in her distal fibula. Dr. Coyle discontinued plaintiff's physical therapy, but did not recommend surgery for her ankle. Dr. Coyle also performed a bone scan which later confirmed that plaintiff suffered a fracture in her left distal fibula. Dr. Coyle treated plaintiff with activity modification and rest.
On 10 December 2004, plaintiff returned to Dr. Daily, and Dr. Daily ordered more x-rays of her left ankle which revealed the same fracture found by Dr. Coyle. Dr. Daily explained that because the mechanism of injury for an avulsion fracture is similar to that of an ankle sprain, an avulsion fracture is sometimes initially diagnosed as an ankle sprain. Furthermore, Dr. Daily explained that he was better able to see plaintiff's fracture on the 10 December x-rays because the site of a fracture naturally loses calcium following the injury and because plaintiff had been walking on her ankle which produced a change in the injury. Despite the change in diagnosis, Dr. Daily noted that the injury was simple to treat, recovery was expected, and that a diagnosis of this type of ankle fracture  instead of an ankle sprain  "would not have affected the management of anything in the early going."
On 20 December 2004, plaintiff returned to Dr. Zucker. Dr. Zucker indicated that plaintiff's pain was an eight out of ten and that she was unable to rest because of the pain. Dr. Zucker put plaintiff in a "CAM" boot and advised her to wear the boot when she walked.
On 17 January 2005, plaintiff again returned to Dr. Zucker for treatment. He indicated that plaintiff gradually was improving, but noted that she was having discomfort with her left knee when she walked.
On 15 February 2005, plaintiff returned to Dr. Daily. Dr. Daily noted that plaintiff was out of her orthosis and walking without much trouble. She continued to have some lateral ankle swelling and some anterior ankle pain with activity, but he released her to work without any restrictions. On 18 April 2005, six months after plaintiff's injury, Dr. Daily noted that plaintiff continued to experience some swelling and irritability with her left ankle, but Dr. Daily diagnosed these as residual symptoms of plaintiff's fracture.
On 19 July 2005, Dr. Daily assigned a three-percent permanent partial impairment rating to plaintiff's left ankle because plaintiff's injury and chronic swelling had some effect on her overall ankle joint function. However, plaintiff had not suffered an interarticular injury, and Dr. Daily stated that her injury was "nowhere close to" warranting a ten-percent permanent partial impairment rating as recommended by either the "AMA Guide or . . . the Industrial Commission Rating Guide."
On 14 March 2006, plaintiff returned to Dr. Daily and reported continued pain and swelling in her left ankle, particularly in the mornings and with activity. Dr. Daily noted that plaintiff's symptoms on this visit were more concentrated in the heel cord and plantar fascia than in the ankle where she suffered the fracture. Dr. Daily associated these problems with plaintiff's excess weight, inactivity, and mobility of her left ankle. At the hearing, plaintiff testified that she was five feet four inches tall and weighed 254 pounds. She further testified that she had gained weight since the accident, and that she avoids activity because putting pressure on her foot causes it to hurt and to swell.
On 31 March 2006, plaintiff presented to the Montgomery County Memorial Hospital complaining of constant swelling and pain in her ankle and knee. However, the attending physician could "not appreciate any significant swelling" in plaintiff's left leg.
On 2 May 2006, plaintiff returned to Dr. Daily. Dr. Daily noted that plaintiff was doing much better than the last time he saw her, that did not have any new treatment to offer plaintiff, and he released her from his care with a permanent partial disability rating of three-percent.
On 8 December 2006, plaintiff returned to Dr. Daily. Dr. Daily took another x-ray of plaintiff's ankle and testified that her condition was stable, and that the architecture of her ankle was the same as it was one year prior. Dr. Daily further stated that plaintiff had not experienced any appreciable degeneration.
During his deposition, Dr. Daily testified that he had no further recommendations for treatment. He did not expect plaintiff to require additional treatment in the foreseeable future, and there were no advisable surgical options based on plaintiff's injury. Dr. Daily explained, "I don't see us doing anything else to her. I would not have rated her if I had felt there [was] going to be any need for any further active treatment."
Plaintiff testified that she continued to work with defendant from the time of her injury on 16 October 2004 until defendant terminated her employment on 21 December 2005. Brandy Billingsly ("Billingsly") testified that she prepared a "corrective action form" regarding the plaintiff on 21 December 2005 in response to complaints from supervising nurses. The complaints alleged that plaintiff violated defendant's policies by (1) sleeping on the job, (2) being away from her assigned hall at times other than for her allotted meal and break times, and (3) using the residents' televisions. Billingsly also testfied that any one of these three policy violations could result in termination of an employee. Plaintiff testified that she received an employee handbook at the beginning of her employment with defendant and that she was aware that any of the three violations could result in her termination. Plaintiff testified that she earned $10.74 per hour working about eighty hours per bi-monthly pay period for defendant prior to her termination.
In November 2005, prior to her termination from employment with defendant, plaintiff began working part-time with Assisted Living Home Care, Inc. ("Assisted Living") earning $8.60 per hour for fifteen hours of work per week. Plaintiff continued working part-time for Assisted Living until May 2006. In March 2006, plaintiff began working for Forrest Oak, another assisted living community. Plaintiff testified that because of pain in her leg, she works between sixty and sixty-eight hours every two weeks at Forrest Oak. Plaintiff earns $9.90 per hour at Forrest Oak, $0.84 less per hour than she made while working for defendant.
On 3 January 2005, defendant's insurance carrier, Key Risk Insurance Company ("defendant-carrier") (collectively with Autumn Care, "defendants"), filed a denial of workers' compensation claim as to plaintiff's injury to her left knee and left leg, but admitted that the injury to plaintiff's left ankle was compensable. On 26 October 2006, Deputy Commissioner J. Brad Donovan ("Deputy Commissioner Donovan") heard the matter pursuant to defendant's Form 33 request for hearing. On 11 May 2007, Deputy Commissioner Donovan filed an opinion and award which found that plaintiff had reached maximum medical improvement and which concluded that she was entitled to payment on her permanent partial impairment rating pursuant to North Carolina General Statutes, section 97-31. Plaintiff timely appealed Deputy Commissioner Donovan's opinion and award to the Full Commission.
On 3 December 2007 the Full Commission filed an opinion and award affirming Deputy Commissioner Donovan's opinion and award. The Full Commission found that plaintiff had reached maximum medical improvement and concluded that plaintiff had received all of the benefits to which she was entitled pursuant to North Carolina General Statutes, section 97-29 and that plaintiff was entitled to payment on her permanent partial disability rating pursuant to North Carolina General Statutes, section 97-31. From the Full Commission's opinion and award, plaintiff appeals.
On appeal, plaintiff first argues that the Full Commission did not apply the correct burden of proof regarding certain issues to defendant. Specifically, plaintiff contends that the Full Commission did not place the burden of proof on defendant as to (1) whether plaintiff has reached maximum medical improvement and (2) whether plaintiff's earning capacity has been diminished by her compensable injury. We disagree. " Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005) (citing Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986)). "Under the first inquiry, the findings of fact are conclusive on appeal so long as they are supported by any competent evidence, even if other evidence would support contrary findings." Calloway v. Memorial Mission Hosp., 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000) (citingAdams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998)). "'The [Full] Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony.'" Adams v. AVX Corp., 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting Anderson v. Construction Co., 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)), reh'g denied, 350 N.C. 108, 532 S.E.2d 522 (1999). Findings of fact by the Full Commission may be set aside on appeal only in the complete absence of competent evidence to support them. Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (citing Saunders v. Edenton OB/GYN Ctr., 352 N.C. 136, 140, 530 S.E.2d 62, 65 (2000)). "'This Court reviews the [Full] Commission's conclusions of law de novo.'" Raper v. Mansfield Sys., Inc., ___ N.C. App. ___, ___, 657 S.E.2d 899, 904 (2008) (quoting Britt v. Gator Wood, Inc., 185 N.C. App. 677, 681, 648 S.E.2d 917, 920 (2007)). However, "[i]f the conclusions of the [Full] Commission are based upon a deficiency of evidence or misapprehension of the law, the case should be remanded so `that the evidence [may] be considered in its true legal light.'" Clark, 360 N.C. at 43, 619 S.E.2d at 492 (quoting McGill v. Town of Lumberton, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939)) (second brackets in original).
In the case sub judice, plaintiff contends that the Full Commission misapplied the burden of proof by not requiring defendant to show that plaintiff had reached maximum medical improvement and that plaintiff's earning capacity had been diminished as a result of her injury. However, plaintiff acknowledges that the Full Commission did not specify which party bore the burden of proof to establish whether plaintiff had reached maximum medical improvement. Plaintiff further acknowledges that she did not present any expert testimony. Rather, only defendant provided medical testimony to the Full Commission supporting its position through Dr. Daily. Therefore, defendant carried its burden of proof to show that plaintiff had reached maximum medical improvement.
Plaintiff also contends that the findings of fact imply that the Full Commission faulted her because she did not present expert testimony. However, nothing appears in the record to demonstrate that the Full Commission faulted plaintiff for not presenting expert testimony. That the Full Commission made findings of fact contrary to such findings as plaintiff would prefer is immaterial. We note that plaintiff's counsel helped establish Dr. Daily's testimony by participating in his deposition, and we reiterate that "'[t]he [Full] Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony.'" Adams, 349 N.C. at 680, 509 S.E.2d at 413.
Furthermore, without analysis or explanation, plaintiff relies on Saums v. Raleigh Community Hospital, 346 N.C. 760, 765, 487 S.E.2d 746, 750 (1997), for the proposition that defendant bears the burden to establish that plaintiff has reached maximum medical improvement. Plaintiff's reliance on Saums is misplaced. First, Saums made no mention of maximum medical improvement whatsoever. Id. Second, the facts and ruling in Saums were related to a presumption of disability pursuant to a Form 21 agreement between the parties, but no such agreement exists in the case sub judice. Id. Third, Saums reversed this Court by holding that we erroneously had created an invalid "presumption that a newly created, post-injury job offered to an employee is of a type generally available in the competitive job market"  a holding that is in apposite to plaintiff's argument in the case sub judice. Id.
Contrary to plaintiff's contention that defendant should have borne the burden of proof to establish plaintiff's earning capacity, we have established that "[p]laintiff bears the burden of showing that she can no longer earn her pre-injury wages in the same or any other employment, and that the diminished earning capacity is a result of the compensable injury." Gilberto v. Wake Forest Univ., 152 N.C. App. 112, 116, 566 S.E.2d 788, 792 (2002).
Accordingly, we hold that plaintiff's first argument is without merit.
In her second argument, plaintiff contends that the Full Commission erred in finding that plaintiff had reached maximum medical improvement . We disagree.
We have defined "maximum medical improvement" as the point at which the injury stabilizes when the healing period ends. See Knight v. Wal-Mart Stores, Inc., 149 N.C. App. 1, 12, 562 S.E.2d 434, 442-43 (2002). "The healing period continues until, after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established."Crawley v. Southern Devices, Inc., 31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976), disc. rev. denied, 292 N.C. 467, 234 S.E.2d 2 (1977).
Plaintiff argues that she has not reached maximum medical improvement because she started to develop a plantar fascia condition and tightness in her heel cord one year and five months after the initial ankle fracture and eight months after being rated and released by Dr. Daily. In support of her argument, plaintiff assigns error to the Full Commission's findings of fact numbered 6 and 7. The Full Commission found as follows:
6. Plaintiff returned to Dr. Daily on March 14, 2006 complaining of tightness in her heel cord. Dr. Daily attributed plaintiff's problems to her excess weight, problems associated with motion, plantar fascia related problems and general inactivity. Dr. Daily opined that plaintiff's difficulties did not require treatment and should improve over time. Plaintiff returned to Dr. Daily again on May 2, 2006 for an evaluation as to any worsening of her condition. Dr. Daily found no significant change in plaintiff's condition and released her from his care.
7. On December 8, 2006, Dr. Daily again examined plaintiff in preparation for his deposition testimony. He opined that plaintiff's ankle was stable, there was no degeneration of the joint and plaintiff had not undergone any significant change in condition since the release and rating. Dr. Daily opined that plaintiff was not in need of further treatment, either now or in the foreseeable future, that there were no surgical options and that he would not have rated plaintiff had he believed there was any need for further treatment. While he recognized that plaintiff's current conditions were, in part, indirect results of her work-related injury, they do not require treatment beyond general following of her condition and there is no treatment that he can offer her. He further stated that should plaintiff's condition deteriorate to the point of requiring treatment, it would likely happen well within a two-year period.
Pursuant to our limited scope of review, we inquire whether these findings of fact are supported by competent evidence. See Clark, 360 N.C. at 43, 619 S.E.2d at 492. We hold that they are. Dr. Daily's medical records and deposition testimony support the Full Commission's findings of fact. On 19 July 2005, Dr. Daily noted that
[a]t this point[, this is] a situation that right now [I] really do feel that [plaintiff] is at [maximum medical improvement] with the lateral malleolus fracture. I do feel that she is at [maximum medical improvement] and with some of the chronic swelling changes and other issues [I] would think that she will have some permanent disability. I would rate her at 3 percent of the ankle . . . .
On 14 March 2006, Dr. Daily noted that plaintiff had not visited him in about eight months, but that her new symptoms had only been at issue for the prior four months. On 2 May 2006, Dr. Daily noted that (1) plaintiff's new symptoms had improved somewhat from her visit on 14 March 2006; (2) he had no further treatment to offer plaintiff; and (3) he advised plaintiff to contact him if she had any further problems or questions.
On 15 December 2006, during his deposition, Dr. Daily explained that,
if you look at the note from [March] 14th, [plaintiff]'s having some tightness of her heel cord, she's having some morning symptoms in her heel which are plantar fascia related which are . . . associated with problems with motion and ankle, and they're also associated with weight, and they're also associated with just . . . general inactivity.
Dr. Daily further stated that "looking at her x-rays on . . . [December] 8th, her anatomy and the architecture of her ankle looks to be . . . what it was a year ago." Dr. Daily expressed that he did not observe any degeneration in plaintiff's ankle and that "the position that [plaintiff]'s in is a stable one . . . ." After acknowledging an indirect, but not-uncommon association between plaintiff's ankle fracture and subsequent plantar fascia symptoms, Dr. Daily maintained, "I don't see us doing anything else to her. I wouldn't have rated her if I had felt that there [was] going to be any need for any further active treatment." Further, during the deposition, plaintiff's counsel asked, "Two years out[,] what is the ankle injury that [plaintiff] still suffers from?"; Dr. Daily answered, "There isn't one." However, Dr. Daily, without changing his prior diagnosis or opinion, offered to continue to treat plaintiff, if needed, but he opined that six to twelve months should be more than an adequate amount of time for any such treatment. Thus, we hold the Full Commission's findings of fact numbered 6 and 7 are supported by competent evidence.
Next, plaintiff argues that the Commission erred by failing to address plaintiff's argument that she is entitled to further medical treatment. We agree.
"'It is well established that the [F]ull Commission has the duty and responsibility to decide all matters in controversy between the parties, and, if necessary, the [F]ull Commission must resolve matters in controversy even if those matters were not addressed by the deputy commissioner.'" Perkins v. U.S. Airways, 177 N.C. App. 205, 215, 628 S.E.2d 402, 408 (2006) (emphasis added) (quoting Payne v. Charlotte Heating & Air Conditioning, 172 N.C. App. 496, 501, 616 S.E.2d 356, 360 (2005)).
In the case sub judice, defendants filed a Form 61 Denial of Workers' Compensation Claim. Defendants admitted compensability of plaintiff's ankle injury, but disputed "the causal relation of the left knee and left leg injury . . . ." Defendants also filed a Form 33 Request for Hearing "because . . . [t]he parties disagree as to the amount of disability to Plaintiff's left ankle and existence and compensability of other injuries."
The parties' pretrial agreement set forth the parties' disputed issues to be resolved at the hearing before Deputy Commissioner Donovan. Defendants listed the disputed issues to be resolved as follows:
1. Whether Plaintiff has suffered any permanent partial impairment to her ankle, pursuant to N.C. Gen. Stat. §97-31?
2. Whether Plaintiff has suffered any reduction in wage earning capacity pursuant to N.C. Gen. Stat. §97-30?
3. Whether Plaintiff must make an election of remedies between N.C. Gen. Stat. §97-30 and N.C. Gen. Stat. §97-31 presently, and if so, to what amount of compensation, if any, is she entitled to receive?
4. Whether Plaintiff is entitled to receive any additional medical treatment for her ankle?
In pertinent part, plaintiff disputed "[w]hether the hearing should be limited to Defendants' issues regarding compensability of `other injuries' as set forth on Defendants' Form 33, Request for Hearing[.]"
Deputy Commissioner Donovan's opinion and award recited the issues to be determined by adopting, nearly verbatim, defendants' disputed issues. Deputy Commissioner Donovan, however, failed to address the existence or compensability of the other disputed injuries contemplated by defendants' Form 33 Request for Hearing or defendants' Form 61 Denial of Workers' Compensation Claim.
Upon review of Deputy Commissioner Donovan's opinion and award, the Full Commission failed to resolve the disputed issues Deputy Commissioner Donovan failed to address. Rather, the Full Commission stated that
[t]he appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan.
Accordingly, we are constrained to remand to the Full Commission for resolution of the existence and compensability of plaintiff's possible injuries to her left knee and leg in view of our prior holdings as to the Full Commission's "'duty and responsibility to decide all matters in controversy between the parties[] and, if necessary, . . . [to] resolve matters in controversy even if those matters were not addressed by the deputy commissioner.'" See Perkins, 177 N.C. App. at 215, 628 S.E.2d at 408 (quoting Payne v. Charlotte Heating & Air Conditioning, 172 N.C. App. 496, 501, 616 S.E.2d 356, 360 (2005)).
In her final argument, plaintiff argues that the Full Commission erred in concluding that there is no evidence that her current condition is disabling. We agree.
As we have stated, we review whether the Full Commission's findings of fact are supported by competent evidence and whether the Full Commission's conclusions of law are justified by its findings of fact. See Clark, 360 N.C. at 43, 619 S.E.2d at 492. "'This Court reviews the [Full] Commission's conclusions of law de novo.'" Raper, ___ N.C. App. at ___, 657 S.E.2d at 904 (quoting Britt v. Gator Wood, Inc., 185 N.C. App. 677, 681, 648 S.E.2d 917, 920 (2007)).
In her final argument, plaintiff again fails to assign error to any of the Full Commission's findings of fact, and, therefore, they are binding on appeal. See Raper, ___ N.C. App. at ___, 657 S.E.2d at 904. Plaintiff further limits her contention to the Full Commission's conclusion of law number 4. See N.C. R. App. P. 28(b)(6) (2007). The Full Commission's conclusion of law number 4 provides that
[p]laintiff is not entitled to further temporary total disability compensation as her termination of employment was for reasons any non-injured employee would have been terminated. Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996). Plaintiff is currently working thirty to thirty-four hours per week, and there is no evidence to show that her employment is limited as a result of her work-related injury. Accordingly, plaintiff is not entitled to temporary partial disability compensation pursuant to N.C. Gen. Stat. §97-30.
(Emphasis added).
However, plaintiff testified that she worked eighty hours every two weeks before her injury, but she only works sixty to sixty-eight hours every two weeks because of swelling and aching in her legs. Pursuant to our de novo review of the Full Commission's conclusion of law, and in light of our remand for resolution as to the existence and compensability of possible injuries to plaintiff's left knee and leg, we hold that the Full Commission erred in stating that "there is no evidence to show that her employment is limited as a result of her work-related injury."
For the foregoing reasons, we affirm in part, and we reverse and remand in part the opinion and award filed by the Full Commission.
Affirmed in part, reversed and remanded in part.
Judges BRYANT and ARROWOOD concur.
Judge ARROWOOD concurred prior to 31 December 2008.
Report per Rule 30(e).