* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, modifies the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the Commission and that the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. It is stipulated that all parties have been correctly designated and that there is no question as to misjoinder or nonjoinder of parties.
 3. The date of the injury by accident is April 9, 2002. *Page 2 
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer-employee relationship between the parties.
5. Defendants admit that on April 9, 2002, Plaintiff sustained an injury by accident to the hand arising out of and in the course of his employment.
6. Stipulated Exhibits 1 — 3, Defendants' Exhibit 1, and Plaintiff's Exhibit 1, are hereby entered into evidence.
7. The issues to be heard are the following:
 a. Whether the blows and trauma Plaintiff sustained in the April 9, 2002 accident on the job brought about and/or caused the condition of "syncope" and thereafter, on or about August 28, 2002, caused Plaintiff's cardiac difficulties and/or heart attack?
 b. Whether or not Plaintiff has been totally and permanently disabled pursuant to the North Carolina General Statutes since April 9, 2002?
 c. Whether Plaintiff's current complaints of cardiac issues are causally related to the compensable accident to the hand and whether he is currently disabled as a result of the compensable accident to the hand?
 d. Whether all medical and disability benefits due to Plaintiff have already been paid?
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff was born on December 18, 1940 and was 64 years old as of the date of the hearing before the Deputy Commissioner. He had worked as an auto body mechanic for Defendant-Employer since 1991.
2. Since 1999, Plaintiff has suffered from many serious medical conditions, including chronic obstructive pulmonary disease, peripheral vascular disease, high blood pressure, bradycardia (low heart rate) and several episodes of dizziness.
3. On April 9, 2002, Plaintiff arrived at work at approximately 7:45 a.m., talked to his supervisor and was instructed to begin work on a Nissan vehicle that had rear end damage. The vehicle was equipped with a heavy spoiler across the trunk. While Plaintiff was working on the rear end of the vehicle, the trunk lid fell, striking him on the left side of his head. Plaintiff pushed the lid up and continued working. The trunk lid later fell again on Plaintiff's hand with such force that it latched shut on Plaintiff's right hand, cutting it in five places due to "jagged metal" from the work plaintiff had already begun on the body of the car. After Plaintiff was able to get the lid released and free his hand, he wrapped his hand in a towel due to significant bleeding and walked a short distance to sit down because he felt nauseated. Robert Price, Plaintiff's stepson and co-worker, initially assisted Plaintiff. Mr. Price then returned to his work duties while Plaintiff was sitting. When he returned to check on Plaintiff about 10 minutes later he found Plaintiff lying on the floor unconscious and he summoned for help. Plaintiff testified that when he regained consciousness, Mr. Roark was present saying, "Don't leave me now." Co-worker, Craig Hollar, made and applied a splint to Plaintiff's right hand before he was transported to the emergency room at Wilkes Regional Medical Center. *Page 4 
4. Because he was the primary care physician for Plaintiff, Dr. Zbigniew Cichon was called to the emergency room to evaluate Plaintiff after it was established that he needed to be admitted to the hospital. Dr. Cichon testified that Plaintiff had very extensive damage to the right hand and forearm area and his skin was so lacerated it could not be sutured. Plaintiff's hand was treated with a topical cream, antibiotics and other medications for inflammation and to prevent infection and narcotics for pain. X-rays taken of the right hand that day were negative for fractures.
5. Due to Plaintiff's low heart rate and fainting episode, Plaintiff was admitted to the hospital and was evaluated by Dr. Cichon, Dr. David M. Seales, a neurologist, and Dr. Francesca Spencer, a cardiologist. While hospitalized, Plaintiff was diagnosed with chronic bradycardia (low heart rate) as his heart rate was in the low forties. Plaintiff had previously been diagnosed with a low heart rate, but not in the low forties. Dr. Cichon was concerned enough to consult with Dr. David Kim, a vascular surgeon, about Plaintiff's low heart rate. Dr. Kim and Dr. Cichon both felt a pacemaker would be beneficial. Plaintiff testified that prior to April 9, 2002, he had experienced dizziness while at work, but had not fainted.
6. With respect to his injury of April 9, 2002, Dr. Cichon testified that Plaintiff had a period where he lost consciousness (syncope) and that Plaintiff was treated with medications and monitored continuously while in the hospital due to the potential damage to organs from the loss of circulation.
7. On April 26, 2002, Dr. David Kim performed the insertion of the pacemaker and Plaintiff's heart rate became normal. About one week later, Plaintiff returned to work for twenty hours per week. Plaintiff continued to receive treatment for his right hand. *Page 5 
8. On August 28, 2002, Plaintiff suffered a myocardial infraction (heart attack) for which Dr. Gretchen Wells, a board-certified cardiologist and internist, treated him at Baptist Hospital Coronary Care Unit. Dr. Wells found a nearly occluded right coronary artery, which her associate opened up and repaired using a stint. Dr. Wells testified that cardiologists use the word heart attack, or myocardial infarction to mean a plaque rupture in one of the blood vessels supplying the heart. Plaintiff testified that his chest pain started either the day before or the day of his heart attack.
9. Plaintiff testified that Defendant-Employer terminated his employment in December 2002. Plaintiff used his health insurance to pay doctor and hospital bills until his insurance was cancelled. Plaintiff testified that he then received Medicaid, but it was stopped when he began receiving disability benefits.
10. Dr. Wells testified that there was no relationship between Plaintiff's accident at work on April 9, 2002, and Plaintiff's heart attack. She testified that the catheterization and stint insertion procedure revealed a build-up of arterial plaque, which was the cause of the heart attack. Dr. Wells further testified that there are "far more compelling reasons to explain with his risk factors and so on as to how this occurred rather than the injury described."
11. Dr. Francesca Spencer, a board certified cardiologist, testified that at the time of his injury, she diagnosed Plaintiff with having "syncope which was probably vasovagal in etiology." Dr. Spencer explained that vasovagal refers to a reaction the body has in response to some type of trauma. Dr. Spencer further testified that the trauma to Plaintiff's right hand could have caused the loss of consciousness and that symptomatic bradycardia could require a pacemaker. She could not give an opinion on whether the loss of consciousness was causally related to Plaintiff's heart problems. She also testified that she does not believe the April 9, 2002 *Page 6 
incident could have caused or even aggravated the conditions for which she treated Plaintiff since Plaintiff had many pre-existing risk factors for a heart attack, including high blood pressure, high cholesterol, peripheral vascular disease and smoking.
12. Dr. Spencer read a cardiac ultrasound imaging of Plaintiff's heart on September 15, 2000, which she interpreted as showing a completely normal heart. The purpose of the ultrasound was to see if Plaintiff's fainting episodes were cardiac in origin, cerebrovascular or a cerebral event such as a seizure. She read another cardiac ultrasound of Plaintiff's heart on April 11, 2002, which showed some minor changes in the heart, but normal functioning.
13. Dr. Spencer opined that if a person is unconscious a long time and there is inadequate blood flow to the heart or brain, damage could occur. She also opined that a laceration to the hand can cause an arterial blood clot if there is arterial damage done and a blood clot forms and a blood clot can go to the heart. She did not know whether Plaintiff had a blood clot, but testified that smokers tend to have abnormal clotting issues.
14. Dr. David Seales is a board certified neurologist with a Ph.D. in psychology. Dr. Seales testified that Plaintiff had a predisposition to "posterior insufficiency," meaning not enough blood was going to the part of the brain that keeps people awake and alert. Dr. Seales opined that on April 9, 2002 when the trunk lid slammed down on Plaintiff's arm, it really hurt him. Due to the pain, he experienced vasovagal syncope, which is a body's self-preserving mechanism for removing oneself from pain because you are unconscious. He further opined that Plaintiff also had a secondary organic seizure resulting from insufficient blood going to the brain. He was familiar with Plaintiff's pre-existing conditions and considered other possible explanations. He considered in rendering his opinions that Plaintiff had a low pulse rate, hurt *Page 7 
himself badly, was able to get over to a chair and sit down and then passed out and had a seizure. The Full Commission gives great weight to the sequence of events Dr. Seales considered.
15. When asked whether Plaintiff's condition of syncope and low heart rate was brought about and caused by the injuries he suffered on April 9, 2002, Dr. Seales answered that the "incident did contribute to the entire scenario on that day." When asked whether Plaintiff's hand accident necessarily caused his seizure or any of his resulting heart problems, Dr. Seales responded that "the injury was sufficiently severe in terms of pain at that time. That regardless of whatever other predisposition for posterior insufficient event was present, it did lead to it within a few second of the event."
16. Dr. Cichon's education and background includes graduating from the Military Medical Academy in Lodz, Poland, after five years of medical training. In 1980, he graduated from Bialystok Medical Academy in Poland. He completed his residency in surgery, pediatrics, obstetrics and internal medicine, and then completed three years training in internal medicine in Poland. He practiced two years in Germany and served as an Assistant Professor in clinical pharmacology before coming to the United States in April 1987. After approximately eight months, he became Research Coordinator at Mt. Sinai Department of Pharmacology. The following year he began work with Rockefeller University in New York for three years while studying for the medical boards. In 1991, he passed the medical boards and passed the clinical boards in 1992. From 1993 through 1996, he completed a three-year training at Coney Island Hospital in Brooklyn, New York. He has practiced in Wilkes County, North Carolina since 1996. He is board certified in Internal Medicine and has been Plaintiff's family doctor since September 1999. *Page 8 
17. Dr. Cichon testified that "the most probable cause of what happened" was that the trunk lid falling on Plaintiff at his place of employment caused his syncope condition and the low heart rate. He testified that the pacemaker improved the condition.
18. Dr. Cichon was out of the country in August 2002, and when he saw Plaintiff on September 10, 2002, Plaintiff had already received a right coronary artery stint for significant narrowing of the right coronary artery. Dr. Cichon testified that the drop in blood pressure Plaintiff would have experienced during his fainting spell would have caused a drop in blood pressure in his right coronary artery and would have triggered the release of thrombogenic chemicals, which cause blood clots and damage to distribution of the right coronary artery. Dr. Cichon opined that the heart attack Plaintiff suffered in August 2002, "is most likely a continuation of the damage in his right coronary artery circulation that he suffered because of the release of thrombogenic hormones as well as sudden drop in blood pressure because of vasovagal reaction damage in the right coronary artery." Greater weight is given to the testimony of Dr. Wells over that of Dr. Cichon on the cause of Plaintiff's heart attack.
19. On April 9, 2002, Plaintiff suffered an injury by accident arising out of and in the course of his employment when a trunk lid fell on his right hand with such force that the lid latched shut. Defendants admit that Plaintiff sustained an injury by accident to his right hand on April 9, 2002. Plaintiff testified that he still had problems gripping things with his right hand at the time of hearing before the Deputy Commissioner on June 27, 2005.
20. Plaintiff has presented sufficient evidence to prove that he suffered a hand injury, syncope, and increased bradycardia causing the need for a pacemaker as a result of his injury by accident on April 9, 2002. Specifically, when asked whether Plaintiff's condition of syncope and low heart rate was brought about and caused by the injuries he suffered on April 9, 2002, Dr. *Page 9 
Seales answered that the "incident did contribute to the entire scenario on that day." Dr. Cichon opined that the heart attack Plaintiff suffered in August 2002, "is most likely a continuation of the damage in his right coronary artery circulation that he suffered" as a result of his April 9, 2002 injury to his right hand. Further, Dr. Cichon opined that that damage to the right coronary artery or myocardial infraction of the inferior wall caused severe bradycardia and that is why Plaintiff required a pacemaker. Plaintiff has not proven by the greater weight of the evidence that his heart attack was causally related to his injury by accident.
21. As a result of his injury by accident Plaintiff was totally disabled from work from April 9, 2002 through the first week of May 2002. Thereafter, Plaintiff returned to work for twenty hours per week. Plaintiff was taken out of work on August 28, 2002 due to a heart attack that was not work related. At the time of his heart attack Plaintiff was still working modified duty as a result of his April 9, 2002 injury by accident and therefore remained partially disabled. Following his heart attack, Plaintiff was released to return to work without restrictions on October 15, 2002, and his partial disability ended. Defendant-Employer terminated Plaintiff in December 2002. At the time of his termination, it appears that Plaintiff was out of work due to his unrelated heart condition.
22. The parties stipulated that Plaintiff's average weekly wage was $548.53 and that his compensation rate was $365.87.
23. Plaintiff has received medical treatment for his pacemaker since it was inserted and Defendants are responsible for payment of medical treatment related to his pacemaker.
 * * * * * * * * * * * *Page 10 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident arising out of and in the course and scope of his employment on April 9, 2002. Plaintiff's accident resulted in injury to his hand, syncope, and increased bradycardia, which caused the need for a pacemaker. N.C. Gen. Stat. § 97-2(6).
2. In a workers' compensation case, the Plaintiff has the burden of proving causation. Holley v. Acts, 357 N.C. 228, 231-232,581 S.E.2d 750, 752 (2003). Where the nature of the injury alleged involves complicated medical questions, only an expert can give competent evidence as to causation. Click v. Freight Carriers, 300 N.C. 164, 167,265 S.E.2d 389, 391 (1980). Here, Plaintiff has presented sufficient evidence that he suffered a hand injury, syncope, and increased bradycardia as a result of his injuries by accident on April 9, 2002. Specifically, when asked whether Plaintiff's condition of syncope and low heart rate was brought about and caused by the injuries he suffered on April 9, 2002, Dr. Seales answered that the "incident did contribute to the entire scenario on that day." Dr. Cichon also causally related the increased bradycardia and the need for a pacemaker to Plaintiff's injury. Also, Dr. Spencer testified that the trauma to Plaintiff's right hand could have caused loss of consciousness and that symptomatic bradycardia could require a pacemaker.
3. In order to receive disability compensation, the employee has the burden of proving the existence of that disability and its extent.Perkins v. U.S. Airways, ___ N.C. App. ___, 628 S.E.2d 402 (2006). The burden may be met in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some *Page 11 
work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment[;] or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Plaintiff has established that he was medically unable to work as a result of his injury from April 9, 2002 through the first week of May 2002. Plaintiff returned to work at 20 hours per week thereafter and worked until August 28, 2002 when he was taken out of work for an unrelated heart attack. At the time of his heart attack, Plaintiff was partially disabled. Plaintiff's partial disability ended on October 15, 2002 when he was released to return to work without restrictions. Plaintiff's medical problems thereafter have been related to his heart and other unrelated medical conditions. However, he has received treatment related to his pacemaker for which Defendants are responsible for payment.
4. Plaintiff is entitled to temporary total disability compensation at the rate of $365.87 per week from April 9, 2002 through the date of his return to work in May 2002 and partial disability compensation thereafter until October 15, 2002 at the rate of two-thirds of the difference between his pre-injury average weekly wage and the wages he earned at twenty hours per week. Plaintiff's entitlement to this partial disability continued at the same rate during the time he was out of work from August 28, 2002 through October 15, 2002 when he was released to return to work without restrictions. N.C. Gen. Stat. §§ 97-29 and 97-30.
5. Defendants are obligated to pay all medical expenses incurred or to be incurred in the future which are reasonably related to Plaintiff's compensable injury and which tend to effect a cure, provide relief and/or lessen his disability. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * * *Page 12 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following: AWARD
1. Defendants shall pay all medical expenses incurred or to be incurred in the future which are reasonably related to Plaintiff's compensable injury, including the costs associated with the pacemaker, which tend to effect a cure, provide relief and/or lessen his disability.
2. Defendant shall pay to Plaintiff temporary total disability compensation at the rate of $365.87 per week from April 9, 2002 through the date of his return to work in May 2002 and partial disability compensation thereafter until October 15, 2002 at the rate of two-thirds of the difference between his pre-injury average weekly wage and the wages he earned at twenty hours per week. Plaintiff's entitlement to this partial disability continued at the same rate during the time he was out of work from August 28, 2002 through October 15, 2002 when he was released to return to work without restrictions. This compensation has accrued and shall be paid in a lump sum. The parties shall confer and determine the amount of wages Plaintiff earned after his return to work in May 2002 and the exact date he returned to work.
3. An attorney's fee of twenty-five percent of the compensation awarded to Plaintiff herein is approved for Plaintiff's attorney payable in a lump sum.
4. Defendants shall bear the costs.
This the __ day of April 2007.
S/_____________
BERNADINE S. BALLANCE
 COMMISSIONER *Page 13 
CONCURRING:
S/__________________
BUCK LATTIMORE
CHAIRMAN
S/________________
PAMELA T. YOUNG
 COMMISSIONER *Page 1