REBECCA MYERS GILBERTO, Employee, Plaintiff v. WAKE FOREST UNIVERSITY, Employer, SELF INSURED (ITT/HARTFORD), Third-Party Administrator, Defendants

No. COA01-955

(Filed 6 August 2002)

**1. Workers' Compensation— continuing disability—failure to meet burden of proof**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee had not met her burden of proof to show a continuing disability, because: (1) the Commission could conclude based on the testimony of the expert witnesses that plaintiff had earning capacity based on her level of education and transferrable skills obtained while Director of Dance, and therefore, was not qualified for temporary total disability past 1 July 1995; and (2) although plaintiff contends the Commission erred by weighing defendants' expert testimony more heavily than that of her expert regarding plaintiff's reasonable efforts to obtain work, it is entirely within the discretion of the Commission to weigh the credibility of expert witnesses when making findings of fact.

**2. Workers' Compensation— date of disability—admission by party**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee's disability began 1 January 1995, the date on which plaintiff's paid medical sabbatical began, instead of 1 September 1995, the date on which plaintiff began her unpaid leave of absence, because by plaintiff's own admission, her ability to compete in the marketplace was impaired as of 1 January 1995.

Appeal by plaintiff from opinion and award entered 20 February 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 May 2002.

*Maureen Geraghty for plaintiff appellant.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Clayton M. Custer and Alison R. Bost, for defendant appellee.*

TIMMONS-GOODSON, Judge.

Rebecca Myers Gilberto ("plaintiff") appeals from an opinion and award entered by the North Carolina Industrial Commission, ("the Commission"). For reasons stated herein, we affirm the opinion and award of the Commission.

Plaintiff suffered a compensable injury while employed as Director of Dance by Wake Forest University ("defendant-employer"). Defendant-employer is a duly qualified self-insured and ITT Hartford is the Third Party Administrator ("Third Party Administrator") (collectively, "defendants"). In April of 1993, plaintiff was diagnosed with plantars fasciitis, Achilles tendinitis, and retrocalcaneal bursitis, which are compensable occupational diseases for dancers. On 24 March 2000, a deputy commissioner for the Commission awarded plaintiff disability compensation from 1 September 1995 through 15 August 1996 and partial disability compensation from 15 August 1996 for a period of not greater than 300 weeks from the date of the injury. Defendants were also awarded a credit for salary paid to plaintiff from 1 January 1995 until 31 August 1995.

From this award, plaintiff filed a Motion to Reconsider the Opinion and Award, and on 19 April 2000, the deputy commissioner awarded plaintiff disability compensation at a rate of $478.00 per week from 1 September 1995 through 31 December 1995 and partial disability compensation from 1 January 1996 for a period not greater than 300 weeks.

Defendants appealed the award to the Commission, which granted plaintiff temporary total disability compensation at a rate of $478.00 per week from 1 January 1995 through 1 July 1995 and permanent partial disability compensation at the same rate, subject to defendants' credit for wage replacement benefits from January until July 1995. In awarding plaintiff benefits the Commission found the following pertinent facts:

3. Plaintiff has an Associate degree from Indiana University Community College and a Bachelor of Science degree in physical education from Ball State University.

5. Plaintiff received a Master's degree in physical education from Ball State University in 1979. This program does not include sports physiology and . . . assist[s] individuals to become gym teachers. Plaintiff did not take dance, speech, or fine arts programs while obtaining her . . . degrees.

7. In 1981, defendant[-employer] hired plaintiff as a physical education instructor. Plaintiff subsequently taught foundations of physical education, gymnastics, social dance, beginning dance, and dance company.

8. The dance company class culminated in a student dance concert that plaintiff choreographed, directed, and produced.

12. Plaintiff also taught dance history, a lecture class, during summer school.

13. In 1992, plaintiff was promoted to dance director . . . . and continued to teach the same classes she had taught as a dance instructor. As dance director, plaintiff performed some administrative duties such as preparing program brochures for student performances. Plaintiff did not have any clerical assistance or staff. Plaintiff's responsibilities included submitting an annual grant application . . . and overseeing the department's $6,000.00 budget.

14. In April 1993, plaintiff began experiencing problems with her right foot. Dr. David Janeway, an orthopedic specialist, treated plaintiff.

16. In January 1994, Dr. Janeway recommended that plaintiff remain out of work for six weeks. Plaintiff did not take time off work despite this recommendation. . . . Dr. Janeway placed a hard cast on plaintiff's right foot. Plaintiff did not miss any work despite the cast.

17. Dr. Janeway recommended that plaintiff stay off her foot and consider other types of employment because of her right foot problems.

19. In the spring of 1994, plaintiff applied for a 6-month leave of absence that began on January 1, 1995. During the leave of absence, plaintiff was paid $27,558.00, her full salary. . . . Furthermore, plaintiff was given discretionary leave pay through July and August, 1995.

20. In late December 1994 or early January 1995 plaintiff and her children moved to the Chicago area.

23. As of July 1, 1995, plaintiff reached maximum medical improvement of her compensable lower extremity right foot con-

ditions. On August 15, 1996, Dr. Janeway assigned plaintiff a 7% permanent partial disability rating for her right foot.

24. On July 13, 1995, defendant granted plaintiff's request for a one-year unpaid leave of absence for the fall of 1995 through the spring of 1996. Defendant ceased all payments to plaintiff as of September 1, 1995.

25. After moving to the Chicago area, plaintiff applied for two jobs in January 1995, for three jobs in June 1995, and one job in August 1995. After September 1995, plaintiff's job search consisted of making only general inquiries about vacancies and reading the classified job sections of the newspaper.

27. Other than the part-time job at ATMCO [a sporting equipment company], plaintiff made no efforts to find a job from September 1995 until September 1996 when she sent out ten job application letters seeking part-time work. After the job ended at ATMCO, plaintiff made no efforts to find work until February 1999, three months prior to the hearing before the Deputy Commissioner.

31. Based upon the results of the functional capacity evaluation, Dr. Janeway stated that plaintiff was able to work full time with restrictions that she not be on her feet for periods greater than 2 hours and 2 hours off throughout the course of the day.

Based on the above-stated findings, the Commission made several conclusions of law, including:

3. [P]laintiff failed to meet her burden of showing continuing disability. She has been released to return to work by her treating physician. She has not made reasonable effort to obtain employment within her restrictions. Plaintiff has a Master's degree and extensive teaching and other work experience. Therefore, her age, education, experience, and training do not render a search for employment futile. For these reasons, plaintiff is not entitled to continuing total disability compensation beyond the date she reached maximum medical improvement.

The Commission awarded plaintiff temporary total disability compensation at a rate of $478.00 per week from 1 January 1995 through 1 July 1995, subject to defendants' credit for wage replacement benefits during this period, and an award for permanent partial disability compensation at the same rate for a period of 10 and 6/7ths

weeks. From said award, plaintiff appeals and defendants cross assign error.

[1] In her first assignment of error, plaintiff argues that the Commission erred in determining that she had not met her burden of proof to show a wage-earning disability. We disagree.

When reviewing a decision by the Commission, this Court considers "(1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405-6, 496 S.E.2d 790, 793 (1998). The Court examines whether there was competent evidence to support the Commission's findings of fact, but it does not re-examine or weigh the evidence. *See Fish v. Steelcase, Inc.*, 116 N.C. App. 703, 708, 449 S.E.2d 233, 237 (1994), *cert denied*, 339 N.C. 737, 454 S.E.2d 650 (1995). We are bound by the Commission's findings if they are supported by competent evidence, even if there is contrary evidence. In contrast, conclusions of law are fully reviewable. *See Richards v. Town of Valdese*, 92 N.C. App. 222, 225, 374 S.E.2d 116, 118 (1988), *disc. review denied*, 324 N.C. 337, 378 S.E.2d 799 (1989).

Disability is defined under the Workers' Compensation Act as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2001). Plaintiff bears the burden of showing that she can no longer earn her pre-injury wages in the same or any other employment, and that the diminished earning capacity is a result of the compensable injury. *See Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). A plaintiff can meet this burden by offering: (1) medical evidence demonstrating that, as a consequence of the work related injury, the plaintiff is unable to work in any employment; (2) evidence that the plaintiff is capable of some employment, but after a reasonable effort, the plaintiff has been unable to obtain any employment; (3) evidence that the plaintiff is able to do some work, but that efforts to seek other work would be futile because of the plaintiff's preexisting conditions, such as age, inexperience, or lack of education; or (4) evidence that the new employment is at a lower wage than the plaintiff earned before the injury. *See Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

GILBERTO v. WAKE FOREST UNIV.

[152 N.C. App. 112 (2002)]

There is competent evidence in the record to support the Commission's conclusion that plaintiff failed to meet her burden of showing a continuing disability. Plaintiff's physician released her to return to work, with few restrictions other than a limitation on prolonged standing. Although plaintiff's condition prevented her from dance instruction, plaintiff's physical limitations were not so restrictive as to render her incapable of performing well in alternate employment. Defendants' expert testified that with plaintiff's level of education and transferrable skills obtained while Director of Dance, she would be able to find comparable employment at a commensurate wage. The Commission could conclude, based on the testimony of the expert witnesses, that plaintiff had earning capacity and therefore was not qualified for temporary total disability benefits past 1 July 1995.

Furthermore, we disagree with plaintiff's argument that the Commission erred in finding that plaintiff did not make reasonable efforts to obtain work. Plaintiff sent out twenty-six applications for jobs over a period of almost five years. Defendants' expert witness testified that a diligent search would entail sending twenty-five applications per week. Although plaintiff argues that the Commission erred in weighing defendants' expert testimony more heavily than that of her expert, it is entirely within the discretion of the Commission to weigh the credibility of expert witnesses when making findings of fact. See Anderson v. Construction Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). In the instant case, experts for both sides testified that plaintiff was capable of working and the record supports both the findings of fact made by the Commission and the conclusions of law based on those findings. We therefore overrule plaintiff's first assignment of error.

[2] In plaintiff's second assignment of error, she argues that the Commission erred in concluding that her disability began 1 January 1995. Plaintiff argues that there was no competent evidence for the Commission to choose 1 January 1995, the date on which plaintiff's paid medical sabbatical began, instead of 1 September 1995, the date on which plaintiff began her unpaid leave of absence. Plaintiff states that her paid leave was an employment benefit and was independent of her disability.

As stated supra, disability means "incapacity . . . to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). "[A]n

GILBERTO v. WAKE FOREST UNIV.

[152 N.C. App. 112 (2002)]

injured employee's earning capacity must be measured not by the largesse of a particular employer, but rather by the employee's own ability to compete in the labor market." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 437, 342 S.E.2d 798, 805 (1986). Therefore, "[w]ages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity." *Id.* at 437, 342 S.E.2d at 806. Plaintiff is essentially arguing that her wages during her paid leave of absence accurately reflected her ability to earn wages in the marketplace.

"The findings of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there be evidence to support a contrary finding." *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 684. The record contains competent evidence for the Commission's finding that 1 January 1995, the date plaintiff stopped working for defendant-employer, is the proper date of the disability. Plaintiff had informed defendant-employer in spring of 1994 that she could no longer perform her job duties because of her injury and applied for the medical sabbatical leave. Clearly, by plaintiff's own admission, her ability to compete in the marketplace was impaired as of 1 January 1995. Thus, even though plaintiff was paid during her leave of absence, such leave cannot be considered evidence of her capacity to earn similar wages in the marketplace. *See Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 84, 155 S.E.2d 755, 761 (1967) ("*A fortiorari* the act of [the] employer in paying [plaintiff's] wages in full from the date of the injury should not be determinative of the employee's disability"). The Commission could reasonably determine that the 1 January 1995 was the proper date of her disability. Plaintiff's second assignment of error is therefore overruled.

Defendants present three cross assignments of error, but given our resolution of the foregoing issues, we need not address defendants' arguments. The decision of the Commission is affirmed.

Judges MARTIN and THOMAS concur.