KATHERINE WILLIAMS, Employee, Plaintiff

v.

BANK OF AMERICA, Employer, AIG CLAIM SERVICES, INC., Carrier, Defendants

No. COA12-965

Filed 2 April 2013

1. **Workers' Compensation—motion to dismiss appeal to full Commission—untimely Form 44 or brief—no abuse of discretion—waiver of rules in interest of justice**

   The Industrial Commission did not err in a workers' compensation case by denying plaintiff's motion to dismiss defendants' appeal to the full Commission based on their failure to file a timely Form 44 or brief identifying the grounds for their appeal. The Commission's decision to exercise its discretion under Workers' Compensation Rule 801 to waive a violation of its own rules in the interest of justice, under these circumstances, did not constitute an abuse of discretion.

2. **Workers' Compensation—causation—migraine headaches**

   The Industrial Commission did not err in a workers' compensation case by determining that plaintiff's migraine headaches were causally related to her work-related injury. The work-related injury need not be the sole cause of the problems to render an injury compensable as long as the work-related accident contributed in some reasonable degree to plaintiff's disability.

3. **Workers' Compensation—temporary total disability—disability from date of termination**

   The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff was disabled and thus

**WILLIAMS v. BANK OF AM.**

[226 N.C. App. 412 (2013)]

entitled to continuing temporary total disability benefits. Plaintiff's testimony, sufficient in itself to establish disability from the date of termination under *Russell's* first prong, was supported by the testimony of her neurologist and her vocational expert.

Appeal by plaintiff from order entered 9 March 2012 and by defendants from opinion and award entered 4 May 2012 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 January 2013.

*Ramsay Law Firm, P.A., by Martha L. Ramsay, for plaintiff.*

*Hedrick Gardner Kincheloe & Garofalo, LLP, by J. A. Gardner, III and M. Duane Jones, for defendants.*

DAVIS, Judge.

Plaintiff-employee Katherine Williams ("plaintiff") appeals from the Industrial Commission's order denying her motion to dismiss the appeal by defendant-employer Bank of America ("BofA") and defendant-carrier AIG Claim Services, Inc. (collectively, "defendants") from the deputy commissioner's opinion and award to the Full Commission. Defendants appeal from the Full Commission's opinion and award determining that plaintiff is entitled to temporary total disability benefits. For the reasons stated below, we affirm both the Commission's order denying plaintiff's motion to dismiss and its opinion and award.

### Factual Background

At the time of the proceedings before the deputy commissioner, plaintiff was 59 years old, with a Bachelor of Arts degree in special education. Prior to working for BofA, plaintiff worked for several years as a special education and second grade teacher. In 1995, plaintiff began working for BofA as a customer service representative. During her tenure, she worked in various departments, including the associate banking, business banking, daylight overdraft, and database departments.

On 8 April 2004, plaintiff was working in BofA's daylight overdraft department. She was training a new employee at a computer terminal, and when she got up to switch chairs with the new employee, the chair was pulled out from under her. She fell to the floor, hitting her back on the chair and her arm on a desk, and "snapp[ing]" her neck. Plaintiff immediately developed a headache.

WILLIAMS v. BANK OF AM.

[226 N.C. App. 412 (2013)]

Plaintiff's supervisor, who witnessed the incident, had plaintiff complete a written incident report. That same day, defendants instructed plaintiff to visit Concentra Medical Center, where she reported back pain, a headache, and numbness in her left leg and foot. She was diagnosed with contusions on her buttocks, thorax, and upper arm, as well as cervical strain and left trapezius pain. She was prescribed medication and told to return to her regular duties. Plaintiff returned to work and completed her shift. Defendants accepted plaintiff's claim on a medical basis only.

Plaintiff's neck was very stiff the next morning and she was unable to turn her head. She returned to Concentra Medical Center on 12 April 2004 and reported relief from her prescription medication and improvement in her back, neck, and left arm. Plaintiff was released to her regular duties and released from care.

Plaintiff subsequently began experiencing migraine headaches that started at her neck and traveled to her eyes. She indicated that these headaches were the same type as the headache she experienced immediately after the 8 April 2004 fall. Due to continued neck pain and headaches, plaintiff presented to her family physician, Dr. Lori Taylor ("Dr. Taylor"), with Cotswold Family Physicians in June 2004. She was prescribed medication to control her headaches.

Plaintiff continued to experience migraine headaches and used over-the-counter medications to manage the pain associated with the headaches and neck pain. Because the over-the-counter medications did not provide relief, plaintiff returned to Dr. Taylor on 12 January 2005, who administered an injection of Demerol for the pain and prescribed Relpax. Dr. Taylor noted that the over-the-counter medications were not working to control plaintiff's headaches and that plaintiff had reported that she had her "worse ever headache" and that "nothing she took helped."

At defendants' request, plaintiff was evaluated by several physicians, including Dr. Bruce Darden ("Dr. Darden") with OrthoCarolina, and Dr. T. Kern Carlton ("Dr. Carlton") with The Rehab Center. Plaintiff was first seen by Dr. Darden on 27 May 2005, complaining of consistent headaches and neck pain following an injury at work on 8 April 2004. An X-ray revealed degenerative changes at C6-C7. Dr. Darden ordered an MRI and recommended physical therapy. Dr. Darden also referred plaintiff to Dr. Anthony Wheeler ("Dr. Wheeler") with Pain and Orthopedic Neurology for pain management.

Plaintiff began physical therapy with HealthSource on 2 June 2005, reporting that her continued headaches and neck pain were gradually worsening. She also reported that she had difficulty working, particularly when performing tasks requiring her to look down at paper or at a computer monitor.

On 5 June 2005, plaintiff's MRI revealed advanced degenerative disc disease at C6-C7 with disc protrusion causing mild central canal stenosis. Later that month, plaintiff was seen by Dr. Wheeler and complained of chronic neck pain and daily headaches. Dr. Wheeler diagnosed plaintiff with chronic cervical-thoracic segmental and soft tissue dysfunction and classic regional myofascial pain syndrome. Dr. Wheeler noted that plaintiff's condition was "traumatic rather than degenerative."

Concerned that plaintiff was suffering from rebound headaches due to her prolonged use of pain medication, Dr. Wheeler tried alternating her headache medication. Dr. Wheeler noted on 30 August 2005 that plaintiff had been able to decrease the use of Relpax but that she still had clusters of days when she had to use it consecutively. On those days, due to the intensity of the headaches and the effects of the medication, she would have to go home and go straight to bed.

Plaintiff was evaluated by Dr. Carlton in September 2006. Plaintiff reported a history of immediate stiff neck and development of headaches after a chair was pulled out from under her and she fell to the floor. Plaintiff's physical examination revealed a moderate decrease in cervical range of motion and some marked improvement in pain when pressure was taken off the cervical spine. Dr. Carlton noted that plaintiff's pain was reproduced when she turned her head. Plaintiff was diagnosed with cervical strain and degenerative disc disease.

Plaintiff continued to have difficulty performing her regular job duties due to her migraines making it hard for her to handle her workload. As a result, plaintiff was transferred to the database team, a position that was less stressful and demanding than her pre-injury position.

On 12 November 2006, Dr. Richard Park ("Dr. Park") took over plaintiff's pain management care. Dr. Park ordered trigger point injections in an effort to provide relief of plaintiff's chronic headaches and migraines. After the course of injections, plaintiff continued to have right-sided neck pain and headaches. Consequently, Dr. Park administered a right greater occipital nerve block. Plaintiff reported that her headaches improved initially but later returned. Dr. Park commented on plaintiff's difficulty in continuing to work, noting: "I suspect that she

will have increased headaches that will be incapacitating at times and work will be an issue." Dr. Park ordered a CT scan and referred plaintiff to Dr. T. Erik Borresen ("Dr. Borresen") with Mecklenburg Neurological Associates for headache management. Dr. Park restricted plaintiff from work pending her evaluation with Dr. Borresen.

Plaintiff presented to Dr. Borresen, a neurologist, on 24 May 2007. Dr. Borresen diagnosed plaintiff with post-traumatic headaches and cervical disc disease, recommended complete withdrawal of Relpax, and prescribed different medications to address her headaches. Plaintiff, however, did not immediately begin the recommended treatment plan as she was undergoing acupuncture treatment and had experienced improvement in her symptoms. When her headaches began increasing in July 2007, plaintiff returned to Dr. Park, who recommended that plaintiff begin Dr. Borresen's treatment plan.

In August 2007, plaintiff began Dr. Borresen's treatment regimen. While her headaches and neck pain improved, she was unable to tolerate the medication due to dizziness, nausea, sedation, and lack of energy. Dr. Borresen wrote plaintiff out of work for two weeks to allow her time to adjust to the medication. On 30 August 2007, plaintiff returned to work after being cleared by Dr. Borresen. In September 2007, plaintiff experienced a rapid increase in her liver enzymes, which resulted in Dr. Borresen discontinuing the recommended medications. Plaintiff's headaches subsequently returned and she began taking Relpax on a daily basis.

Due to plaintiff's failure to respond to standard medications, Dr. Borresen recommended therapy with Botox injections. Plaintiff received two rounds of injections in her head, forehead, neck, and shoulders in October 2007. Plaintiff's headaches improved after the injections, but she had an allergic reaction to the Botox, and, consequently, a variation of Botox called Myobloc was used.

On 1 June 2008 plaintiff was laid off by BofA as a result of a reduction in force. Plaintiff obtained a severance package that allowed her to collect severance pay and unemployment benefits. While receiving unemployment benefits, plaintiff applied for positions with approximately eight banking institutions. However, as of the time of the proceedings before the Full Commission, plaintiff had not worked since she was laid off by BofA.

Following her termination, plaintiff continued to be treated by Dr. Borresen for her headaches and neck pain. She underwent further

injections, additional physical therapy, a functional restoration program, and various medication changes. Plaintiff experienced a significant increase in her symptoms in October 2008. She began suffering headaches more frequently – 12 within a 14-day period. The headaches required her to lie down and were often accompanied by increased neck pain and a stabbing sensation in her eyes.

Plaintiff received another Myobloc injection, which provided improvement for roughly two months. Afterwards, Dr. Borresen administered 11 injections to plaintiff's head and neck. Plaintiff's headaches did not improve with the increased level of injections. Dr. Borresen noted that the most recent Myobloc injections had not provided any "impressive" results and that he was concerned that plaintiff's headaches had become medication refractory.

On 22 September 2009, Dr. Borresen concluded that plaintiff was unable to work due to cervical disc disease and intractable post-traumatic headaches and thus recommended that she apply for Social Security disability benefits. In a subsequent affidavit, Dr. Borresen opined that plaintiff had reached maximum medical improvement and would require lifetime medical management of her headaches.

Plaintiff presented to Dr. Theodore Belanger ("Dr. Belanger") for an Independent Medical Evaluation on 27 October 2009. Dr. Belanger believed that the changes on plaintiff's MRI were not the cause of her neck pain. Based on his examination of plaintiff and review of her MRI scan, Dr. Belanger concluded that plaintiff was not a surgical candidate and offered no further treatment recommendations. Dr. Belanger did not address plaintiff's ability to work.

On 7 February 2011, a hearing was conducted by Deputy Commissioner Myra L. Griffin on plaintiff's claim for benefits. The deputy commissioner issued an opinion and award on 7 November 2011, awarding plaintiff temporary total disability benefits and ordering defendants to pay plaintiff's ongoing medical treatment expenses. Counsel for defendants filed a notice of appeal from the deputy commissioner's decision on 15 November 2011, and, on 8 December 2011, the transcript of the hearing was transmitted electronically to the parties by the Industrial Commission.

On 16 January 2012, plaintiff's counsel filed a motion to dismiss defendant's appeal for failure to timely file a Form 44 and appellants' brief. On 24 January 2012, counsel for defendants filed a response to plaintiff's motion, as well as a Form 44 and appellants' brief. In an order

entered 9 March 2012, the Commission denied plaintiff's motion to dismiss but sanctioned defendants by waiving their oral argument before the Commission.

The Commission subsequently issued an opinion and award on 4 May 2012, in which it affirmed the deputy commissioner's decision with minor modifications. Plaintiff appealed to this Court from the Commission's 9 March 2012 order denying her motion to dismiss defendants' appeal, and defendants appealed from the Commission's 4 May 2012 opinion and award.

## Analysis

### I. Plaintiff's Appeal

[1] Plaintiff's sole contention on appeal is that the Commission erred in denying her motion to dismiss defendants' appeal to the Full Commission from the deputy commissioner's opinion and award. More specifically, plaintiff argues that the Commission should have dismissed defendants' appeal based on their failure to file a timely Form 44 or brief identifying the grounds for their appeal from the deputy commissioner's opinion and award. We disagree.

Industrial Commission Rule 701 governs appeals taken from decisions issued by deputy commissioners to the Full Commission. The rule provides, in pertinent part, as follows:

> (2) After receipt of notice of appeal, the Industrial Commission will supply to the appellant a Form 44 Application for Review upon which appellant must state the grounds for the appeal. The grounds must be stated with particularity, including the specific errors allegedly committed by the Commissioner or Deputy Commissioner and, when applicable, the pages in the transcript on which the alleged errors are recorded. Failure to state with particularity the grounds for appeal shall result in abandonment of such grounds, as provided in paragraph (3). Appellant's completed Form 44 and brief must be filed and served within 25 days of appellant's receipt of the transcript or receipt of notice that there will be no transcript, unless the Industrial Commission, in its discretion, waives the use of the Form 44. . . .
>
> (3) Particular grounds for appeal not set forth in the application for review shall be deemed abandoned, and

argument thereon shall not be heard before the Full Commission.

Workers' Comp. R. of N.C. Indus. Comm'n 701(2)-(3) (2012).

Industrial Commission Rule 801, however, states as follows:

> In the interest of justice, these rules may be waived by the Industrial Commission. The rights of any unrepresented plaintiff will be given special consideration in this regard, to the end that a plaintiff without an attorney shall not be prejudiced by mere failure to strictly comply with any one of these rules.

Workers' Comp. R. of N.C. Indus. Comm'n 801 (2012).

Our Supreme Court has explained:

> The North Carolina Industrial Commission has the power not only to make rules governing its administration of the [Workers' Compensation Act], but also to construe and apply such rules. Its construction and application of its rules, duly made and promulgated, in proceedings pending before the said Commission, ordinarily are final and conclusive and not subject to review by the courts of this State, on an appeal from an award made by said Industrial Commission.

*Winslow v. Carolina Conference Ass'n*, 211 N.C. 571, 579-80, 191 S.E. 403, 408 (1937).

Although the Industrial Commission has the discretionary authority under Rule 801 to waive violations of its own rules in the interest of justice, *Wade v. Carolina Brush Mfg. Co.*, 187 N.C. App. 245, 251, 652 S.E.2d 713, 717 (2007), our courts have been careful to emphasize that the Commission may do so "only 'where such action does not controvert the provisions of the statute.' " *Chaisson v. Simpson*, 195 N.C. App. 463, 474, 673 S.E.2d 149, 158 (2009) (quoting *Hyatt v. Waverly Mills*, 56 N.C. App. 14, 25, 286 S.E.2d 837, 843 (1982)).

Our analysis of plaintiff's appeal is guided by our prior decisions in *Roberts v. Wal-Mart Stores, Inc.*, 173 N.C. App. 740, 619 S.E.2d 907 (2005), *Wade v. Carolina Brush Mfg. Co.*, 187 N.C. App. 245, 652 S.E.2d 713 (2007), and *Soder v. CorVel Corp.*, 202 N.C. App. 724, 690 S.E.2d 30, *cert. denied*, 364 N.C. 327, 700 S.E.2d 924 (2010). Accordingly, we discuss these three cases in detail.

**WILLIAMS v. BANK OF AM.**

[226 N.C. App. 412 (2013)]

In *Roberts*, this Court addressed Rule 701's requirement that a party appealing to the Full Commission file a Form 44 and an appellant's brief. In appealing the deputy commissioner's denial of her claim to the Full Commission, the plaintiff in *Roberts* failed to file a Form 44, an appellant's brief, or any other document setting out with particularity the grounds for her appeal. *Roberts*, 173 N.C. App. at 744, 619 S.E.2d at 910. The Commission, after waiving oral arguments and stating that it would render a decision based on a review of the record, entered an opinion and award in favor of the plaintiff. *Id.* at 742-43, 619 S.E.2d at 909.

On appeal, the defendants argued that they were prejudiced by the Full Commission's decision to allow the appeal to go forward despite the plaintiff's total noncompliance with Rule 701. *Id.* at 743-44, 619 S.E.2d at 910. In reversing and vacating the Commission's decision, this Court recognized that while the Industrial Commission may waive the requirement that a Form 44 be submitted, Rule 701(2) " 'specifically requires that grounds for appeal be set forth with particularity.' " *Id.* at 744, 619 S.E.2d at 910 (quoting *Adams v. M.A. Hanna Co.*, 166 N.C. App. 619, 623, 603 S.E.2d 402, 405–06 (2004)). Consequently, this Court held:

> [T]he portion of Rule 701 requiring appellant to state with particularity the grounds for appeal may not be waived by the Full Commission. Without notice of the grounds for appeal, an appellee has no notice of what will be addressed by the Full Commission. The Full Commission violated its own rules by failing to require that plaintiff state with particularity the grounds for appeal and thereafter issuing an Opinion and Award based solely on the record.

*Id.* Notably, the applicability of Rule 801 was raised neither by the parties nor by this Court in *Roberts*.

In *Wade*, the plaintiff filed a notice of appeal from the deputy commissioner's decision but failed to file a Form 44, an appellant's brief, or any other document specifying the grounds for appeal. *Wade*, 187 N.C. App. at 247, 652 S.E.2d at 714-15. In its opinion and award, the Full Commission invoked Rule 801 to waive the requirements of Rule 701, denied the defendants' motion to dismiss the appeal, and awarded the plaintiff disability compensation. *Id.* at 247-48, 652 S.E.2d at 714-15.

On appeal, this Court began its discussion of the interplay between Rules 701 and 801 by noting that, based on *Roberts*, "the penalty for non-compliance with the particularity requirement is waiver of the grounds [for appeal], and, where no grounds are stated, the appeal is abandoned."

*Id.* at 249, 652 S.E.2d at 715-16. After discussing the "interest of justice" component of Rule 801, the Court held that Rule 801 does not enable the Industrial Commission to waive total noncompliance with Rule 701's requirement that the appellant state with particularity the grounds for review. *Id.* at 252, 652 S.E.2d at 718.

In *Soder*, 202 N.C. App. at 725-26, 690 S.E.2d at 31, the plaintiff timely noticed appeal from the deputy commissioner's denial of his claim; however, he filed his Form 44 and appellant's brief beyond the 25-day deadline set out in Rule 701. Citing Rule 701 and Roberts, the Commission granted the defendant's motion to dismiss the appeal. *Id.* at 730, 690 S.E.2d at 33-34. Although the plaintiff requested that the Commission exercise its discretion under Rule 801 to excuse his untimely filing, the plaintiff failed to obtain a ruling on that request. *Id.* at 730-31, 690 S.E.2d at 33-34.

The plaintiff argued on appeal that Rule 701 authorizes dismissal only where no Form 44 and appellant's brief are filed at all. *Id.* at 726, 690 S.E.2d at 31. This Court – after discussing both *Roberts* and *Wade* – rejected that contention. With regard to the plaintiff's additional argument that Rule 801 required the Commission to consider a lesser sanction before dismissing the appeal, this Court declined to address the applicability of Rule 801 in light of (1) the plaintiff's failure to obtain a ruling from the Commission as to his request for relief under Rule 801; and (2) his failure to properly argue that the Commission erred in not ruling on the request. *Id.* at 731, 690 S.E.2d at 34. Accordingly, this Court affirmed the Commission's decision. *Id.*

Thus, the issue presented here is distinct from the issues addressed by this Court in *Roberts, Wade,* and *Soder* – namely, whether the Commission has discretion under Rule 801 to allow a party's appeal to go forward despite the party's failure to strictly comply with the time limitations contained in Rule 701. We conclude that the Commission does possess such discretion. Moreover, as we held in *Soder,* " '[o]ur standard of review of the Commission's exercise of a discretionary power is a deferential one, and the Commission's decision will not be overturned absent an abuse of discretion.' " *Id.* at 730, 690 S.E.2d at 33 (quoting *Wade,* 187 N.C. App. at 251, 652 S.E.2d at 717).

We note that the concerns raised in *Wade,* 187 N.C. App. at 252, 652 S.E.2d at 717-18, about the need for proper notice to the appellee and the inappropriateness of the Industrial Commission's assumption of the roles of both advocate and adjudicator are wholly absent in this case. In her brief to this Court, plaintiff does not contend that the Commission's

reliance on Rule 801 to waive strict compliance with the time limitations in Rule 701 provided her with less than adequate notice of the particular grounds that defendants were attempting to raise before the Full Commission. Nor does she contend that, under the circumstances, she had less than sufficient time to respond to these grounds in her appellee's brief to the Full Commission.

Accordingly, we cannot say that the Commission's decision to exercise its discretion under Rule 801, under these circumstances, constituted an abuse of discretion. As such, we affirm the Commission's order denying plaintiff's motion to dismiss defendants' appeal.

## II. Defendants' Appeal

### A. Standard of Review

We now consider defendants' appeal from the Industrial Commission's opinion and award. Appellate review of a decision by the Commission is limited to "reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). As the fact-finding body, the Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998). The Commission's findings of fact are thus conclusive on appeal when supported by competent evidence, despite the existence of evidence in the record that might support contrary findings. *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004). The Commission's conclusions of law are, however, reviewed *de novo. Id.*, 597 S.E.2d at 701.

### B. Causation

[2] Defendants first argue that the Commission erroneously determined that plaintiff's migraine headaches are causally related to her work-related injury. In particular, defendants challenge the Commission's findings regarding Dr. Borresen's medical opinion that plaintiff's work-related injury caused her headaches:

> 38. Dr. Borresen opined that Plaintiff's fall on April 8, 2004 was a significant contributing factor in aggravating her pre-existing degenerative disc disease at C6-7. Dr. Borresen further opined that Plaintiff's fall on April 8, 2004 could have either caused transmitted forces to travel up her back to her neck or she could have sustained a

hyper-flexion or hyperextension injury, like a whiplash. He was also of the opinion that, based on his training, education, experience and evaluation of Plaintiff[,] that her accident either directly caused or was a significant contributing factor to her post-traumatic headaches.

. . . .

41. The Full Commission has reviewed and weighed all of the evidence and the testimony, including that of Drs. Borresen, Carlton and Park. Dr. Borresen is a neurologist, who has continued to evaluate and treat plaintiff since 2007. Based on his medical specialty and his treatment of plaintiff, Dr. Borresen is in a better position to determine the causal relationship between plaintiff's workplace fall and her headaches. Therefore, the Full Commission gives greater weight to the testimony and opinions of Dr. Borresen on the issue of causation over any contrary medical opinion testimony.

42. Based upon a preponderance of the evidence, the Full Commission finds that on April 8, 2004, Plaintiff suffered an injury by accident due to a fall arising out of and in the course of her employment resulting in the aggravation of her pre-existing cervical condition and which directly caused or significantly contributed to the onset of her post-traumatic headaches. . . .

Based on these findings, the Commission concluded as a matter of law that, "[a]s a direct and natural consequence flowing from Plaintiff's injury by accident, Plaintiff developed post-traumatic headaches."

Under the Workers' Compensation Act, the plaintiff bears the burden of "produc[ing] competent evidence establishing each element of compensability, including a causal relationship between the work-related accident and his or her injury." *Castaneda v. Int'l Leg Wear Grp.*, 194 N.C. App. 27, 31, 668 S.E.2d 909, 913 (2008), *aff'd per curiam*, 363 N.C. 369, 677 S.E.2d 454 (2009). "The quantum and quality of the evidence required to establish *prima facie* the causal relationship will of course vary with the complexity of the injury itself." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). In cases involving complicated medical questions, "only an expert can give competent opinion evidence as to the cause of the injury." *Id.* Where expert opinion testimony is necessary, "medical certainty is not required," but

"an expert's 'speculation' is insufficient to establish causation." *Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003).

As defendants acknowledge, Dr. Borresen testified regarding causation as follows:

> Based on my training, education and experience, and evaluation of Ms. Williams, I am of the opinion, to a reasonable degree of medical certainty, that Ms. Williams' accident on the job either directly caused her post-traumatic headaches, or her accident was a significant contributing factor in the development of her post-traumatic headaches. . . .

This Court has held repeatedly that testimony of this nature is sufficient to establish causation. *See, e.g., Rose v. N.C. Dep't of Corr.*, __ N.C. App. __, __, 727 S.E.2d 708, 711 (2012) (relying on doctor's deposition testimony that, to a "reasonable degree of medical certainty," it was "more likely than not" that plaintiff's back injury "relate[d]" to fall at work); *Javorsky v. New Hanover Reg'l Med. Ctr.*, 208 N.C. App. 644, 650, 703 S.E.2d 761, 765-66 (2010) (concluding that doctor's opinion, based on experience, and to a "reasonable degree of medical certainty," that plaintiff's shoulder pain was "related" to her compensable neck injury was sufficient to "take[] the case out of the realm of conjecture and remote possibility and provides sufficient, competent evidence of a proximate causal relation").

Defendants nonetheless argue that Dr. Borresen's testimony is insufficient to satisfy plaintiff's burden of proof of establishing causation. In support of their argument, defendants rely on the Supreme Court's statement in *Holley* that expert testimony is insufficient to prove causation "when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." 357 N.C. at 233, 581 S.E.2d at 753 (citation and quotation marks omitted). Defendants claim that Borresen's testimony does not meet the "standard set out in *Holley*," because, according to them, he failed to rule out potential causal factors other than plaintiff's work-related injury, and because he stated, as a general matter, medical science was not aware of all the possible mechanisms that could "trigger" migraines.

*Holley* is inapposite. In that case, one of the plaintiff's doctors testified that there was a "low possibility" that the plaintiff's accident caused her injury. *Id.* Another doctor testified, "I am unable to say with any degree of certainty whether or not [the injury] is related to the development of her [medical condition]" and "I don't really know what caused [the plaintiff's medical condition]." *Id.*, 581 S.E.2d at 753-54. Based on

the speculative nature of the doctors' testimony, the Supreme Court concluded that the evidence was not sufficiently reliable to establish causation. *Id.* at 234, 581 S.E.2d at 754.

Here, in contrast, Dr. Borresen's affidavit and deposition testimony establish that he considered the possible causes of plaintiff's migraines. Based on his review of the medical records, his treatment of plaintiff, and plaintiff's history, he ultimately testified to a reasonable degree of medical certainty that the work-related injury caused plaintiff's migraines. This testimony was not speculative but rather was sufficient evidence of causation supporting the Commission's determination. *See Springs v. City of Charlotte*, 209 N.C. App. 271, 277, 704 S.E.2d 319, 324 (2011) (finding expert testimony sufficient where "[a]lthough [doctor] acknowledged that, as a general matter, there are various possible causes for [plaintiff's condition], he testified that, in his opinion, to a reasonable degree of medical certainty, the accident caused or aggravated [plaintiff's] condition").

Defendants also contend that the evidence in the record suggesting that plaintiff had pre-existing degenerative disc disease and that she might be genetically predisposed to migraine headaches undermines the Commission's determination of causation. Defendants cite no authority in support of this position. Indeed, our appellate courts have repeatedly held to the contrary, stating that " '[t]he work-related injury need not be the sole cause of the problems to render an injury compensable. If the work-related accident contributed in some reasonable degree to [the] plaintiff's disability, [the plaintiff] is entitled to compensation.' " *Smith v. Champion Int'l*, 134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (1999) (quoting *Hoyle v. Carolina Associated Mills*, 122 N.C. App. 462, 465–66, 470 S.E.2d 357, 359 (1996)). Defendants' arguments concerning causation are, therefore, overruled.

### C. Disability

[3] Defendants' final argument on appeal is that the Commission erred in concluding that plaintiff is disabled and thus entitled to continuing benefits. In order to support a conclusion of compensable disability, the Commission must find:

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that

WILLIAMS v. BANK OF AM.

[226 N.C. App. 412 (2013)]

this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Under this test, the employee "bears the burden of showing that [he or] she can no longer earn [his or] her pre-injury wages in the same or any other employment, and that the diminished earning capacity is a result of the compensable injury." *Gilberto v. Wake Forest Univ.*, 152 N.C. App. 112, 116, 566 S.E.2d 788, 792 (2002).

An employee may meet his or her burden of proving disability in one of four ways:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).

With respect to plaintiff's burden of establishing disability, the Commission found:

> 43. On the issue of disability, Dr. Borresen opined that Plaintiff is unable to work due to her cervical disc disease and intractable post-traumatic headaches. He further opined that her work related injuries have completely disabled her from any type of gainful employment and she would not be a reliable employee since she could not sustain a consistent performance, would require sheltered employment and could only work when she was able. Dr. Borresen concluded that Plaintiff was totally disabled from any employment as of June 1, 2008.

> 44. Plaintiff testified that she is not able to return to competitive employment as a result of her post-traumatic

headaches. She described her headaches as disabling, accompanied by light and noise sensitivity, nausea and intolerance of activity that requires her to lie down. Plaintiff testified that she is also unable to participate in pre-injury activities of daily living. She believes that she would not be able to keep up with the work assigned and stay focused as she has difficulty concentrating and her medication makes her excessively drowsy and sedates her for hours.

45. Patrick Clifford, a vocational expert, testified that it would be futile for Plaintiff to seek employment as she would be unable to consistently perform and attend work as required. Mr. Clifford opined that a majority of employers would not allow employees to be out of work or perform at a reduced capacity on a long term basis.

46. Based upon a preponderance of the evidence from the entire record, including the testimony of Dr. Borresen and Plaintiff's own credible testimony concerning the disabling effect of her post-traumatic headaches as a result of her work related injuries, the Full Commission finds that as of June 1, 2008 Plaintiff was totally incapable of earning wages in any capacity.

47. As a direct and proximate result of her April 8, 2004 injury by accident and resulting headaches, Plaintiff has been temporarily totally disabled from employment from June 1, 2008 through the close of the record herein and continuing.

Based on these findings, the Commission concluded that "Plaintiff has satisfied the first prong of Russell with competent medical evidence that she is physically, because of her work-related injuries, incapable of any work in any employment," and thus plaintiff was "entitled to temporary total disability benefits beginning June 1, 2008 and continuing until further order of the Commission."

Although defendants suggest in passing that the Commission's findings are not supported by competent evidence, defendants' primary complaint is that "[w]hile Plaintiff claims that she cannot work, she provided no explanation for why she was able to work for over four years following the accident and immediately upon her layoff could no longer work." In *Joyner v. Mabrey Smith Motor Co.*, 161 N.C. App. 125, 587

S.E.2d 451 (2003), this Court addressed a similar argument. There, the plaintiff, who worked for the defendant-employer as a car mechanic, was injured while test driving a car he was repairing when he was hit from behind. *Id.* at 127, 587 S.E.2d at 453. The plaintiff was diagnosed with a cervical strain. *Id.* Over time, the plaintiff's condition worsened, and he was placed on medical restrictions by his treating doctor, missing work periodically as a result of dizziness, blurred vision, and headaches associated with the accident. *Id.*

Subsequently, the plaintiff had his wife call the defendant to report that he was unable to come to work due to a headache. *Id.* The next day, when the plaintiff showed up for work, he was terminated by the defendant for failing to follow personnel policy by having his wife call in sick for him. *Id.*

On appeal from the Commission's decision awarding the plaintiff disability benefits, the defendant argued that the Commission had erred in concluding that the plaintiff was disabled "because [the] plaintiff came to work the day he was terminated; therefore . . . [the] plaintiff could not have been unable to work." *Id.* at 130, 587 S.E.2d at 455. This Court rejected that argument, relying on the Commission's determination "that [the] plaintiff had not worked since the date of his termination 'as a result of problems associated with his injury by [the] accident on July 6, 1998' and [that the] plaintiff was entitled to total disability benefits from that date." *Id.*

Similarly here, the Commission determined that plaintiff was entitled to disability benefits from the date of her termination because of the "disabling effect of her post-traumatic headaches as a result of her work related injuries . . . ." This finding, as noted by the Commission, is supported by plaintiff's own testimony regarding the debilitating effect of her post-traumatic headaches, which are accompanied by light and noise sensitivity, nausea, and intolerance of activity. Plaintiff further testified that she would not be able to keep up with the workload in a new position because she has difficulty concentrating and her medication makes her excessively drowsy.

Plaintiff's testimony, sufficient in itself to establish disability under *Russell's* first prong, is supported by the testimony of her neurologist, Dr. Borresen, and her vocational expert, Patrick Clifford ("Clifford"). *See Joyner*, 161 N.C. App. at 130-31, 587 S.E.2d at 455 (noting that "further competent evidence [was] not required" to establish disability where "plaintiff expressly testified that his efforts to obtain subsequent employment were thwarted by his medical restrictions resulting from

the accident and no one would consider him because of those restrictions"). Dr. Borresen stated in his affidavit that plaintiff's post-traumatic headaches prevented her from being a "reliable employee" due to the fact that she could not maintain "consistent performance" and could "only work when she was able." He further indicated that, due to her work-related injuries, plaintiff would require "sheltered employment," which prevented her from "secur[ing] another job."

Clifford similarly stated during his deposition that, in his experience, most employers have a probationary period for new employees, during which time absence from work will automatically result in termination. In light of such policies, Clifford opined that "it would be futile for [plaintiff] to seek employment, because I don't believe she could maintain it."

The testimony of plaintiff, Dr. Borresen, and Clifford support the Commission's findings, which, in turn, support its conclusion that plaintiff successfully established under *Russell's* first prong that she was disabled from the date of termination and thus entitled to temporary total disability benefits. It is not the role of this Court to assume the role of the Commission in evaluating the credibility of witnesses. *See Joyner*, 161 N.C. App. at 131, 587 S.E.2d at 455 ("Whether we would have reached a different result on the evidence is irrelevant, and more importantly, beyond the scope of our review.").

Defendants further assert that plaintiff, in order to obtain unemployment benefits from the Employment Security Commission, certified that she was, in fact, able to work. Contrary to defendants' contention, however, this Court has held that "receipt of unemployment benefits standing alone may not bar receipt of workers' compensation benefits." *Fletcher v. Dana Corp.*, 119 N.C. App. 491, 498, 459 S.E.2d 31, 36, *disc. review denied*, 342 N.C. 191, 463 S.E.2d 235 (1995). Similarly, we have held that a certification of ability to work does not estop an employee from recovering disability benefits, nor is it binding on the Commission on the issue of disability. *Dolbow v. Holland Indus., Inc.*, 64 N.C. App. 695, 699, 308 S.E.2d 335, 337 (1983), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 651 (1984). The evidence of plaintiff's receipt of unemployment benefits was before the Commission but ultimately was not viewed as dispositive in light of the other competent evidence in the record. As this Court cannot "re-weigh the evidence" on appeal, *Martin v. Martin Bros. Grading*, 158 N.C. App. 503, 506, 581 S.E.2d 85, 87, cert. denied, 357 N.C. 579, 589 S.E.2d 127 (2003), we affirm the Commission's opinion and award.

**WILLIAMS v. BANK OF AM.**

[226 N.C. App. 412 (2013)]

## Conclusion

For the reasons set out above, we affirm both the Industrial Commission's 9 March 2012 order denying plaintiff's motion to dismiss defendants' appeal and its 4 May 2012 opinion and award.

AFFIRMED.

Judges STROUD and HUNTER, Jr. concur.