**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1159**

HARVEY L. TAYLOR,

Plaintiff - Appellant,

v.

SHREEJI SWAMI, INC.; LRP HOTELS OF KINSTON, LLC, d/b/a Holiday Inn
Express Hotel and Suites/Kinston; INTERCONTINENTAL HOTEL GROUP
RESOURCES, INC.; INTERCONTINENTAL HOTELS GROUP, PLC, d/b/a
Holiday Inn Express; HOLIDAY HOSPITALITY FRANCHISING, INC.; IHG
FRANCHISING, LLC; UNKNOWN PARTIES, jointly and severally,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at
Raleigh.  Louise W. Flanagan, District Judge.  (5:17-cv-00405-FL)

Argued:  May 13, 2020                                    Decided:  July 2, 2020

Before THACKER, QUATTLEBAUM, and RUSHING, Circuit Judges.

Affirmed by unpublished opinion.  Judge Rushing wrote the opinion, in which Judge
Thacker and Judge Quattlebaum joined.

**ARGUED**:  Ralph Thomas Bryant, Jr., RALPH BRYANT LAW FIRM, Newport, North
Carolina, for Appellant.  William Wayne Pollock, RAGSDALE LIGGETT, PLLC,
Raleigh, North Carolina, for Appellees.  **ON BRIEF**:  Edward E. Coleman III,

RAGSDALE LIGGETT, PLLC, Raleigh, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

Harvey L. Taylor appeals from the district court's order and judgment awarding summary judgment to or dismissing all defendants in his civil action for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of contract, and breach of the implied warranty of habitability. On appeal, Taylor challenges only the district court's grant of summary judgment to defendant Shreeji Swami, Inc. (SSI) on his claim for negligence. We affirm.

I.

While a guest at a hotel owned and operated by SSI, Taylor became trapped for approximately 30 minutes in a malfunctioning elevator. The elevator made a "jerk-like" movement but never left the first floor.

Taylor sued, alleging that the experience exacerbated several preexisting medical conditions. In particular, Taylor testified that at the time of the incident he was already under medical care for claustrophobia, posttraumatic stress disorder (PTSD), depression, anxiety, and gastroesophageal reflux disease (GERD), and the elevator incident aggravated those conditions.

Pertinent to this appeal, the district court granted SSI's motion for summary judgment on Taylor's common law negligence and negligent infliction of emotional distress claims. Because the court stated that it was granting summary judgment on Taylor's negligence claim "for the reasons stated in its discussion of [his] negligent infliction of emotional distress claim," Taylor argues that the district court improperly conflated the standards for the two distinct claims. Even if that were the case, when

3

reviewing a district court's decision to grant summary judgment we may affirm on any basis fairly supported by the record. *See Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016). Having independently reviewed the record, we conclude that summary judgment was proper on Taylor's negligence claim because he failed to proffer evidence that could establish causation between SSI's conduct and his alleged injuries.

II.

"We review a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

III.

In a negligence action under North Carolina law, which the parties agree applies here, the plaintiff bears the burden of demonstrating that "(1) the defendant owed a duty to the plaintiff; (2) the defendant failed to exercise proper care in the performance of the duty; and (3) the breach of the duty was a proximate cause of the injury suffered by the plaintiff." *Andresen v. Progress Energy, Inc.*, 696 S.E.2d 159, 161 (N.C. Ct. App. 2010) (internal quotation marks omitted). Proximate cause "is ordinarily a question to be determined by

4

the jury as a fact in view of the attendant circumstances." *Oxendine v. Lowry*, 133 S.E.2d 687, 690 (N.C. 1963). But "[i]f the evidence be so slight as not reasonably to warrant the inference [of proximate cause], the court will not leave the matter to the speculation of the jury." *Conley v. Pearce-Young-Angel Co.*, 29 S.E.2d 740, 742 (N.C. 1944). The only evidence Taylor has proffered supporting his claim that the elevator malfunction exacerbated his claustrophobia, PTSD, depression, anxiety, and GERD is his own deposition testimony to that effect.[*] We conclude that, under North Carolina law, such lay testimony is insufficient to establish causation with respect to the injuries alleged in this case; under these circumstances, evidence from a medical expert is required.

North Carolina courts do not require expert medical evidence to prove causation in every negligence case alleging personal injury. As the state Supreme Court has recognized, "[t]here are many instances in . . . which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of." *Gillikin v. Burbage*, 139 S.E.2d 753, 760 (N.C. 1965). Some injuries—such as bruises, lacerations, and broken bones—manifest in such an immediate and apparent manner that

---

[*] Taylor disclosed medical records to SSI during discovery, but those records were not submitted "for consideration at summary judgment" and "therefore . . . [were] not before [the district] court," nor are they before this Court on appeal. J.A. 555. In his deposition testimony, Taylor referenced alleged representations by various physicians and psychologists who treated him after the elevator incident, but those hearsay references cannot be relied upon at summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995); *U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc.*, 64 F.3d 920, 926 (4th Cir. 1995).

any observer can discern the causal relationship between a particular impact and a resulting wound.

But other injuries—no less real or compensable—are beyond the ability of a layman to attribute to a particular event unaided. "Where . . . the subject matter . . . is so far removed from the usual and ordinary experience of the average man that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of death, disease, or a physical condition." *Gillikin*, 139 S.E.2d at 760 (internal quotation marks omitted). In such a case, expert medical testimony is essential to establish causation. *Id.* ("Where a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony." (internal quotation marks omitted)); *Anderson v. Housing Auth. of Raleigh*, 609 S.E.2d 426, 429 (N.C. Ct. App. 2005) ("Where a layperson can do no more than speculate as to the cause of a physical condition, the medical opinion of an expert is required to show causation."); *see*, *e.g.*, *Miller v. Lucas*, 147 S.E.2d 537, 547 (N.C. 1966) (quoting *Gillikin*); *Smith v. Herbin*, 785 S.E.2d 743, 745 (N.C. Ct. App. 2016) (same); *Curry v. Baker*, 502 S.E.2d 667, 672 (N.C. Ct. App. 1998) (same); *Goble v. Helms*, 307 S.E.2d 807, 814 (N.C. Ct. App. 1983) (same).

The necessity of expert evidence of causation is assessed on a case-by-case basis, taking into consideration factors such as the type of injury, the alleged mechanism of the injury, the immediate appearance of symptoms, and whether the plaintiff was previously in good health and free from the kind of symptoms involved. *See Click v. Pilot Freight*

6

*Carriers, Inc.*, 265 S.E.2d 389, 391–392 (N.C. 1980) (applying *Gillikin* in the worker's compensation context); *see*, *e.g.*, *Jordan v. Glickman*, 14 S.E.2d 40, 41–42 (N.C. 1941) (finding no expert evidence necessary to show causation in negligence action for the death of a teenager who had previously been in good health when he was struck by a car and "hurled . . . to the ground," resulting in immediate bruising, swelling, and "severe pains in his chest," and the victim's parents observed his "chest continue to swell" until his death four months later). But "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Click*, 265 S.E.2d at 391.

*Gillikin* provides a useful example of injuries that fall into both of these categories. In *Gillikin*, the plaintiff was struck by an idling car that "lurched forward" when the defendant's foot slipped off the clutch. 139 S.E.2d at 756. "The vehicle moved only a very short distance, and plaintiff was not knocked to the ground." *Id.* She developed "soreness almost immediately" as well as a six-inch diameter bruise at the point of impact. *Id.* In the ensuing lawsuit, the plaintiff also claimed to have suffered a ruptured disc in her back traceable to the collision. *Id*. at 756, 759.

The *Gillikin* court discussed whether expert evidence was required for the plaintiff to recover for her various alleged injuries. "[N]o medical evidence was required to link plaintiff's soreness the next day and the six-inch bruise on her right hip with the incident." *Id.* at 760. But, with respect to the ruptured disc—an injury "far removed from the usual and ordinary experience of the average man"— the court declared that "expert knowledge

7

[wa]s essential to the formation of an intelligent opinion." *Id.* Because "[t]he physical processes which produce a ruptured disc belong to the mysteries of medicine," in the absence of expert evidence, a layman could do no more than speculate as to whether the impact of the car proximately caused that injury. *Id.*

More recently, in *Smith v. Herbin*, the North Carolina Court of Appeals applied *Gillikin* to determine that a plaintiff's testimony regarding symptoms she developed after an automobile accident failed to establish proximate cause. 785 S.E.2d at 745. The plaintiff testified that immediately after the defendants rear-ended her stopped car "her left arm was tingling and her back was itchy." *Id.* at 744. Doctors treated the plaintiff with pain injections, physical therapy, and ultimately surgery on her shoulder. *Id.* The court rejected the plaintiff's contention that she could prove proximate causation at trial with only her own lay testimony. *Id.* at 745. As the court explained, "sensations [such as tingling and itchiness] and their neurological causes are far more complex than bruising that results when a part of the human body is struck by something." *Id.* Nor was the "direct mechanism" of plaintiff's injuries "readily apparent to the average person—for example, when a car door strikes a person's hip resulting in the bruise." *Id.* Because the plaintiff did not present competent evidence of causation, her claim failed. *Id.*

Comparing Taylor's alleged injuries to those discussed in *Gillikin* and *Smith*, we believe Taylor's injuries are more like a ruptured disc or tingling sensation than they are a bruise. Taylor has alleged that SSI's negligence exacerbated his existing claustrophobia, PTSD, depression, anxiety, and GERD. These conditions and their causes are indisputably complex. The mechanics of such injuries are not "readily apparent to the average person,"

8

*Smith*, 785 S.E.2d at 745, but instead "belong to the mysteries of medicine," *Gillikin*, 139 S.E.2d at 760. That is especially true when we consider that Taylor already suffered from each condition before the incident but alleges that SSI's negligence aggravated those conditions. To be sure, a "layman of average intelligence and experience" may understand in the abstract that conditions such as claustrophobia and PTSD can be exacerbated by traumatic events (including, perhaps, being trapped in a malfunctioning elevator). *Gillikin*, 139 S.E.2d at 760. But whether a particular traumatic event caused a particular exacerbation (requiring treatment such as different medication or more counseling, as Taylor alleges), "involves complicated medical questions far removed from the ordinary experience and knowledge of laymen." *Click*, 265 S.E.2d at 391. In short, the connection between Taylor's alleged injuries and SSI's purported negligence is the opposite of "simple, uncontradictory, and obvious." *Id.* at 391–392. We therefore conclude that expert medical evidence is necessary to prove proximate causation between SSI's purported negligence and Taylor's alleged injuries.

None of the foregoing should be understood to minimize the potential impact of psychological harms flowing from traumatic events or to suggest that such injuries are not compensable in a common law negligence action. We merely apply well-established principles of North Carolina law which dictate that when a plaintiff's alleged injury involves a complex medical question or manifests in a manner that is not obvious or otherwise apparent to persons without medical expertise, a plaintiff is obliged to produce and rely upon expert evidence to establish causation. *See*, *e.g.*, *Williams v. Bank of Am.*, 742 S.E.2d 227, 235 (N.C. 2013) ("In cases involving complicated medical questions, 'only

9

an expert can give competent opinion evidence as to the cause of the injury.'" (quoting *Click*)); *Young v. Hickory Bus. Furniture*, 538 S.E.2d 912, 915 (N.C. 2000) ("Due to the complexities of medical science, particularly with respect to diagnosis, methodology and determinations of causation, this Court has held that 'where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.'" (quoting *Click*, 265 S.E.2d at 391)); *Fontenot v. Ammons Springmoor Assocs.*, 625 S.E.2d 862, 868 (N.C. Ct. App. 2006) ("If the link between an [injury] and an accident . . . involves a complex medical question . . . a finding of causation must be premised upon the testimony of a medical expert.").

Taylor's deposition testimony, by itself, is insufficient to prove causation in this case; expert medical evidence is required. Because Taylor bears the burden of establishing causation, a necessary element of his negligence claim, his failure to put forth competent evidence in that regard precludes him, as a matter of law, from advancing that claim before a jury. Accordingly, the judgment of the district court granting summary judgment in favor of SSI is

*AFFIRMED*.